2000 ME 203

**Robert S. PRATT**

v.

**John OTTUM et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs Sept. 14, 2000.

Decided Nov. 27, 2000.

Ronald E. Colby III, Esq., Sumner H. Lipman, Esq., Lipman & Katz, P.A., Augusta, attorneys for plaintiff.

Edward R. Benjamin Jr., Esq., Lisa Fitzgibbon Bendetson, Esq., Thompson & Bowie, for Ottum, Quinn & Thompson.

William Fisher, Esq., Portland, for County Commissioners.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

RUDMAN, J.

[¶ 1] The individually named defendants, John Ottum, Daniel Thompson, and Peter Quinn, appeal from the order of the Superior Court (Lincoln County, *Marsano, J.*), which denied their motion for a summary judgment on Count X of Robert S. Pratt's amended complaint, alleging civil rights violations pursuant to 42 U.S.C. § 1983. The defendants assert that there are no disputes as to material facts and that they are entitled to summary judgment as a matter of law on their defenses of qualified immunity and legislative immunity. Finding no material facts in dispute regarding the qualified immunity defenses, we vacate and remand the matter for the entry of a summary judgment in favor of the individually named defendants.

## I. CASE HISTORY

[¶ 2] Defendants Ottum, Thompson, and Quinn were volunteer members of the General Board and Executive Board of the Lincoln County Planning Office (LCPO)[1] prior to its dissolution in March, 1997. The LCPO was incorporated in 1990 as a non-profit, quasi-municipal corporation.[2]

The LCPO was created in order to strengthen local government within Lincoln County by identifying regional challenges and opportunities and by assisting regional municipalities to coordinate their efforts to address those challenges and opportunities that were beyond the means of any municipality acting singularly.

[¶ 3] Ottum, Quinn, and Thompson were appointed to the General and Executive Boards of the LCPO by Lincoln County and member municipalities. The General Board possessed the general power to govern the LCPO and was comprised of Ottum, Thompson, and Quinn, who served as its Chairman, Vice–Chairman and Treasurer, respectively. Ottum, Quinn, and Thompson also served on the Executive Board, which was responsible for implementing the plans of the General Board.

[¶ 4] In 1989, during the defendants' tenure on the General and Executive Boards, the Executive Board hired Pratt to serve as the LCPO's Executive Director. Pratt's duties included ensuring that the agenda, minutes, and announcements of the General Board were written as proposed, preparing draft annual budgets, overseeing the day-to-day activities of the office, and preparing contracts and proposals. Pratt's salary and benefits were paid by Lincoln County, and the County provided him with a car and a county identification. Pratt's employment was memorialized in a "Memorandum of Understanding." In 1990, the LCPO adopted Lincoln County's personnel policies and Pratt's employment became subject to its provisions as well.[3]

[¶ 5] In October 1995, the General Board appointed an Evaluation Committee to

---

1. The LCPO's incorporated name is the Municipal Resource and Planning Office of Lincoln County.

2. The LCPO existed prior to 1990, but performed its duties as an unincorporated, quasi-municipal entity.

3. There is a dispute as to whether, in 1992, the LCPO amended its personnel policies to provide that the LCPO had direct responsibility for hiring and terminating employees and to provide for alternative payment options, such as flex time and compensatory pay for hours worked in excess of 48 hours weekly. There is no indication that this dispute has an impact on the issues presented in this case.

evaluate Pratt's job performance. The Committee reported numerous deficiencies in Pratt's performance.[4] The General Board, through Ottum, presented Pratt with the report and informed him that he must make substantial improvement in the areas indicated. Ottum told Pratt that he would be reevaluated in six months.

[¶ 6] In April 1996, the Committee reevaluated Pratt and determined that he had not made the desired improvements. The General Board met on April 22, 1996, and authorized the Executive Board to request Pratt's resignation and resolved that, if Pratt refused to resign, his position would be terminated. In response to this measure, Pratt requested that he be able to submit a letter of resignation in which he would express his decision to "retire." He also requested that he be allowed to draft a retirement agreement and press release.[5] The parties did not readily come to an agreement over the terms of Pratt's retirement, primarily because of a dispute over the amount of his severance package. In August 1996, negotiations broke down, Pratt withdrew his offer of resignation, and the General Board voted to terminate his position retroactive to April 1996.

[¶ 7] Pratt appealed his termination to the Lincoln County Appeal Board. On October 7, 1996, the Appeal Board ruled that the LCPO had deprived Pratt of his due process by (1) failing to properly advise him of his probationary status in October 1995, when the Evaluation Committee was appointed, (2) not following "progressive disciplinary action procedure," and (3) not permitting Pratt to attend the General Board's executive session in order to respond to the evaluation, all of which was contrary to the LCPO's personnel policy. The Appeal Board ordered that Pratt be reinstated and that, "[i]f the Board of Directors desire to dismiss Mr. Pratt after reinstatement, the proper notice and hearing must be provided."

[¶ 8] The Appeal Board, however, did not decide the issue of whether Pratt was entitled to back pay and benefits. On November 5, 1996, it issued a supplemental order, awarding Pratt back pay and benefits for the period from August 20, 1996, the date of Pratt's dismissal, to the date of his reinstatement. It denied Pratt's demand for back pay and benefits for the period immediately prior to August 20, 1996.

[¶ 9] On October 15, 1996, the Executive Board informed Pratt that he had been reinstated, but that he was "not to participate in the operation of the LCPO except as directed," that he was to "complete any and all assignments from [his] home," and that he would "not have any supervisory responsibilities." Pratt eventually met with Thompson and Quinn on November 5, 1996, and they informed him that he was

---

4. The Committee's report is neither cited in nor appended to the defendants' 7(d) statement. The defendants simply cite to the Ottum, Quinn, and Thompson affidavits. Because Pratt does not contest the fact that the Committee issued a negative evaluation, this fact is deemed admitted. Aside from the defendants' affidavits, the specific deficiencies in Pratt's performance have no independent corroboration. Pratt disputes all of these alleged deficiencies in his 7(d) statement, but he does not aver that they are false. Because he does not provide record citation to a contrary affidavit or to other evidence, the defendants' description of his deficiencies are not "properly controverted" and may be deemed admitted. *See* M.R. Civ. P. 7(d)(2). The deficiencies the defendants assert include the following: (1) Lincoln County municipalities were not participating in the LCPO because they believed Pratt performed little or no service for them; (2) municipalities were recommending that Lincoln County withhold financial support from the LCPO; (3) the LCPO had to reimburse $7000 to the State for services for which Pratt improperly billed it; and (4) the Department of Transportation indicated it would not contract for any additional work with the LCPO because of Pratt's billing irregularities.

5. Pratt presented the County Commissioner with alternative retirement letters. In one letter, he expressed only the desire to retire. In a second letter, Pratt added a paragraph containing criticism of the Board's management of the LCPO, blaming them for its lack of success.

to return to work the next day, but that his duties had been substantially reduced. During Pratt's absence, the Executive Board had hired Terri Jones as its "Managing Director." The Executive Board had delegated to Jones the primary responsibilities that Pratt had previously held. Jones was also given Pratt's office.

[¶ 10] On November 6, 1996, Pratt filed a seven-count complaint against the LCPO, including (1) an M.R. Civ. P 80B appeal of the Appeal Board's adverse decision on back pay and benefits for the period between April 23, 1996, and August 20, 1996; (2) statutory claims for unpaid wages and compensatory time; (3) a plea for injunctive relief from the LCPO's failure to fully reinstate Pratt to his executive duties; (4) a claim for breach of contract, and (5) a section 1983 claim for violation of Pratt's First Amendment and Due Process rights.

[¶ 11] Upon his return to the workplace, the environment became tense and unfriendly. Pratt expressed concern to Ottum, Thompson, and Quinn that the LCPO did not have the resources to pay two directors' salaries and made statements to the press that the LCPO was in "dire straits" because of a lack of funding.[6]

[¶ 12] On January 17, 1997, Pratt conducted an evaluation of Donna Heavener, a LCPO staff member, and was critical of her job performance. Heavener appealed

Pratt's evaluation and characterized the appeal as a grievance as well, alleging that Pratt was intimidating and harassing her for perceived disloyalty relating to his prior termination. On January 28, 1997, Ottum wrote to Pratt and advised him that he was suspended with pay. At a February hearing on Heavener's grievance, the General Board went into executive session and emerged from it with the news that they would not hold the Heavener grievance hearing and that Pratt's suspension with pay would continue because they had decided to dissolve the LCPO. On March 13, 1997, the General Board formally voted to dissolve the corporation because its financial solvency was in jeopardy.

[¶ 13] On June 4, 1997, Pratt amended his complaint, adding as defendants, Lincoln County, the Board of County Commissioners, and the defendants-in-interest in this interlocutory appeal—Ottum, Thompson and Quinn. In addition to adding two new claims against the governmental defendants, this amended complaint added section 1983 claims against Ottum, Quinn, and Thompson.

[¶ 14] Ottum, Thompson, and Quinn filed a summary judgment motion on February 1, 1999, asserting legislative and qualified immunity defenses. The Superior Court denied their motion.[7] The court ruled, "[b]y 1996, it was well established 'that a constructive discharge of a public employ-

---

6. The defendants acknowledge that the LCPO was no longer financially viable. Although they had relieved Pratt of any real authority over the LCPO's operation, they state in their statement of material fact that "Mr. Pratt put forth no plan that would address the financial disaster overtaking the LCPO."

7. The court also ruled on the summary judgment motions of all interested defendants. With respect to the remaining claims, the court awarded back pay and benefits from April 23, 1996, the day Pratt was informed that he must resign or face termination, until August 20, 1996, the date the Board formally terminated him. Pratt's claim for injunctive relief was dismissed as moot. A summary judgment was denied against Pratt's claim for violation of 26 M.R.S.A. §§ 621 & 626 (1988

& Supp.1999), which govern the time of payment and the remedies available for nonpayment of wages. A summary judgment was granted on Pratt's claim for unpaid compensatory time under the same statutory provisions on the ground that comp time does not qualify as wages and is not recoverable under those provisions. A summary judgment was denied on Pratt's claim for breach of the employment contract. Finally, a summary judgment was granted on Pratt's 1983 claim against the County and the LCPO on the ground "that Plaintiff's damages were not caused by a policy or custom[, but] by the Board's failure to follow policy." Presumably, this aspect of the ruling also extends to the individual defendants in their official capacities. All other counts were withdrawn.

ee without procedural due process constitutes an unconstitutional deprivation of property.' Because their actions violated plaintiff's clearly established rights, defendants are not entitled to a qualified immunity as a matter of law."

## II. STANDARD OF REVIEW

 [¶ 15] An order denying a motion for a summary judgment must be reviewed for errors of law. *See Andrews v. Dep't of Envtl. Prot.,* 1998 ME 198, ¶ 10, 716 A.2d 212, 217. The availability of the qualified immunity defense is a question of law. *See id.* at ¶ 13, 716 A.2d at 217. Pursuant to the death-knell exception to the final judgment rule, we will hear a government official's interlocutory appeal from an order denying a motion for summary judgment in which a claim of immunity is raised. *See id.* (citing *J.R.M., Inc. v. City of Portland,* 669 A.2d 159, 160 & n. 1 (Me.1995)). A court ruling on a motion for summary judgment may consider only the portions of the record referred to, and the material facts set forth, in the Rule 7(d) statements.[8] *See Prescott v. State Tax*

**8.** Rule 7(d) provides:

> (1) In addition to the material required to be filed by subdivision (b) of this rule, upon any motion for summary judgment there shall be annexed to the motion a separate, short and concise statement of material facts, supported by appropriate record references, as to which the moving party contends there is no genuine issue to be tried.
> (2) The party opposing a motion for summary judgment shall file with the material required to be filed by subdivision (c) of this rule a separate, short and concise statement of material facts, supported by appropriate record references, as to which it is contended that there exists a genuine issue to be tried.
> *All material facts set forth in the statement required to be served by the moving party, if supported by appropriate record references, will be deemed to be admitted unless properly controverted by the statement required to be served by the opposing party.*

M.R. Civ. P. 7(d) (emphasis added). Pursuant to this rule, Pratt filed a lengthy statement of

*Assessor,* 1998 ME 250, ¶ 5, 721 A.2d 169, 172 (citations omitted).

## III. DISCUSSION

 [¶ 16] Pursuant to 42 U.S.C. § 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

42 U.S.C. § 1983 (1994 & Supp.2000). Government officials may be sued in their personal capacities for damages for actions they take in their official capacity or otherwise, provided that while acting under color of state law, they cause the deprivation of a federal right. *Andrews,* ¶ 11, 716 A.2d at 217 (citation omitted). An official may raise the defense of a qualified immunity against such claims. *See id.* The qualified immunity defense shields officials from liability stemming from the perfor-

material facts and responded to specific factual statements put forth in defendants' statements of fact. However, most of the facts Pratt alleged have one—and only one—record citation, which is to "Pratt Affidavit at 22." Because there is no page 22, we assume Pratt is referring to Paragraph 22 of his affidavit. Paragraph 22 provides:

> I have read the Memorandum prepared by counsel on my behalf and the facts stated therein at page 2 through 8 and on page 11 exclusive of the last two lines, and footnote 4 on page 14 are true.

This record citation does not conform with the prescriptions of Rule 7(d)(2) and is, therefore, an improper record reference. *See* M.R. Civ. P. 7(d)(2). Although we do not base our decision on Pratt's inadequate record references, this interlocutory appeal could, alternatively, be vacated on the ground that the defendants' statement of fact, to which Pratt responded in the above proscribed manner, are deemed true and uncontroverted. In that instance, the facts in evidence do not demonstrate that defendants have violated any "clearly established statutory or constitutional rights," and Pratt's Count X claim fails.

mance of a discretionary function "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

[¶ 17] In the present case, the defendants are entitled to the qualified immunity defense because "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." The trial court erred as a matter of law in finding, on these facts, that defendants were not entitled to a qualified immunity and, accordingly, in denying defendants' motion for a summary judgment.

*A. Pratt Already Received Full Procedural Due Process.*

■ [¶ 18] The Superior Court found that "[b]y 1996, it was well established 'that a constructive discharge of a public employee without procedural due process constitutes an unconstitutional deprivation of property.' ... Because their actions violated [Pratt's] clearly established rights, defendants are not entitled to qualified immunity as a matter of law." Pratt, however, had received the full procedural due process to which he was entitled for the 1996 events to which the court was referring. The events, in fact, culminated in a decision and order of the Lincoln County Appeal Board calling for Pratt's reinstatement. Defendants, therefore, are entitled to a summary judgment on this issue. Furthermore, because the LCPO has been dissolved, the issue of Pratt's employment status, particularly after he was reinstated, is now moot.

*B. Constitutionally Protectable Property Interest Neither Exists In Pratt's Job Duties Nor In Pratt's Suspension When Such Suspension Is With Pay.*

[¶ 19] Pratt argues the defendants are not entitled to a qualified immunity be-

cause the defendants obstructed the reinstatement order of the Appeal Board by (1) refusing to allow Pratt to perform the duties of his previous position and (2) using a pretext to suspend him from the position to which he had been ordered reinstated.

■ [¶ 20] Pratt's contention that the Board failed to reinstate him to the identical duties he held prior to his wrongful termination is unavailing. First, Pratt offers no authority to support his proposition that he has a property right in these specific job duties.[9] Indeed, the jurisdictions that have had the opportunity to consider this issue have expressly held that there is no property right in particular job duties. *See Annapolis v. Rowe,* 123 Md.App. 267, 717 A.2d 976, 987 (1998) (citing *Royster v. Bd. of Trustees,* 774 F.2d 618, 621 (4th Cir.1985), *cert. denied,* 475 U.S. 1121, 106 S.Ct. 1638, 90 L.Ed.2d 184 (1986) (holding that any constitutionally protected property interest employee had as a result of his employment contract has been satisfied by payment of full compensation—including salary and benefits—due under the contract)); *Huang v. Bd. of Governors,* 902 F.2d 1134, 1141–42 (4th Cir.1990) (holding that constitutionally protected property interest in employment does not extend to right to possess and retain particular job or to perform particular services); *Fields v.. Durham,* 909 F.2d 94, 98 (4th Cir.1990), *cert. denied,* 498 U.S. 1068, 111 S.Ct. 786, 112 L.Ed.2d 849 (1991) (stating "we have held that the constitutionally protected property interest in employment does not extend to the right to possess and retain a particular job or to perform particular services.... Rather, the property interest is more generally in continued employment, and *no deprivation exists so long as the employee receives 'payment of the full compensation due under the contract.'* " (emphasis added)). Pratt's argument must, therefore, fail because he had no property interest in the right to possess or retain particular job duties. *See Gilbert v. Ho-*

---

**9.** In fact, Pratt does not cite any authority in support of his Due Process claim.

*mar,* 520 U.S. 924, 928, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997) (finding "[t]he protections of the Due Process Clause apply to government deprivation of those prerequisites of government employment in which the employee has a constitutionally protected 'property' interest."); *see also Lollar v. Baker,* 196 F.3d 603, 607 (5th Cir. 1999) (holding "[t]he Constitution does not create property interests; they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law").

■ [¶ 21] With respect to the second question of whether the Board obstructed the reinstatement order by using a pretext to suspend Pratt, this contention too must fail. It is undisputed that Pratt was receiving pay during his 1997 suspension. Although we have not previously had occasion to decide, numerous other jurisdictions have held, and we agree, that suspension *with pay* does not deprive an employee of a property right that is protected by the Fourteenth Amendment of the U.S. Constitution. *See Annapolis v. Rowe,* 717 A.2d at 988 (holding that suspended employee had no constitutionally protected property interest in actually performing job; due process rights are not implicated so long as employee continues to receive salary and benefits); *Wasson v. Sonoma County Junior Coll. Dist.,* 4 F.Supp.2d 893, 906 (N.D.Cal.1997), *aff'd on other grounds,* 203 F.3d 659 (9th Cir.2000) (stating that "Wasson, by acknowledging that she was placed on administrative leave, cannot claim that she was deprived of a property interest in her employment, as a matter of law"); *Hunt v. Prior,* 236 Conn. 421, 673 A.2d 514, 524 (1996) (holding that a suspension with pay did not carry consti-

tutional ramifications because plaintiff did not prove that he was entitled to anything but his salary); *Koelsch v. Town of Amesbury,* 851 F.Supp. 497, 500 (D.Mass. 1994) (finding "[a] public employee's suspension with pay does not implicate a constitutionally protected property interest"); *Bd. of Educ. v. Harrell,* 118 N.M. 470, 882 P.2d 511 (1994) (holding that a suspension with pay does not violate any recognized property interest); *Hicks v. City of Watonga,* 942 F.2d 737, 746 (10th Cir.1991) (holding that a "suspension with pay [does] not invade any recognized property interest"); *Pitts v. Bd. of Educ.,* 869 F.2d 555, 556 (10th Cir.1989) (holding that a two-day suspension with pay does not deprive plaintiff of measurable property interest); *Pierce v. Engle,* 726 F.Supp. 1231, 1237 (D.Kan.1989) (holding that a school principal's suspension with pay did not implicate a constitutionally protected property interest); *Gates v. Sicaras,* 706 F.Supp. 169, 172–73 (D.Conn. 1989) (holding "[p]laintiff fails, however, to offer any evidence pointing to a claim of entitlement to such benefits of employment beyond his regular salary"). Because Pratt was suspended with pay, his due process rights are not implicated. Defendants are, therefore, entitled to a summary judgment on this issue.

■ [¶ 22] Finally, Pratt contends that the defendants are not entitled to a qualified immunity because they obstructed his reinstatement in retaliation for appealing from the administrative and judicial decisions that had been made. A valid First Amendment claim requires a court to resolve a number of issues. First, a court must determine whether Pratt's actions are protected by the Amendment. This will be the case if Pratt exercised his free speech [10] or petition [11] rights on a matter of

---

**10.** Pratt argues that the General Board's adverse employment measures were taken in retaliation for his public comments about the "dire straits" in which the LCPO was in financially. We do not reach this part of Pratt's First Amendment contentions because he failed to provide sufficient record evidence

to support his claim. *See Your Home, Inc. v. City of Portland,* 432 A.2d 1250, 1254 (Me. 1981) (stating appeal must be denied if appellant has not presented adequate record for review) (citations omitted).

**11.** The United States Supreme Court has not ruled on whether a section 1983 claim based

public concern, as opposed to a matter of personal interest. *See Tang v. State of R.I., Dep't of Elderly Affairs,* 163 F.3d 7, 12 (1st Cir.1998). Second, a court "must weigh the strength of the employee's and the public's First Amendment interests against the government's interest in the efficient performance of the workplace." *Id.* (citing *Pickering v. Bd. of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)). Third, if Pratt and the public's First Amendment interests outweigh a legitimate governmental interest in curbing the protected right, Pratt must show

that the exercise of the protected right was a substantial or motivating factor in the adverse employment action taken by the defendants. *See id.* (citing *O'Connor v. Steeves,* 994 F.2d 905, 913 (1st Cir. 1993)).

■ [¶ 23] The action to which Pratt points as the exercise of a right protected by the petitions clause of the First Amendment fails on the first prong; it does not involve a matter of public concern.[12] The action relates to the General Board's decision to remove him from his executive

on a violation of the petitions clause must meet the public concern test. *See Gable v. Lewis,* 201 F.3d 769, 771 (6th Cir.2000). The majority of Circuit Courts that have addressed the issue conclude that the rights at issue should not be treated differently. Thus, these courts hold that in order for a public employee to have a viable section 1983 claim, the petition for redress must involve a matter of public concern. *See Tang v. State of R.I., Dep't of Elderly Affairs,* 163 F.3d 7, 12 (1st Cir.1998); *White Plains Towing Corp. v. Patterson,* 991 F.2d 1049 (2nd Cir.1993), *cert. denied,* 510 U.S. 865, 114 S.Ct. 185, 126 L.Ed.2d 144 (1993); *Day v. South Park Indep. Sch. Dist.,* 768 F.2d 696 (5th Cir.1985), *cert. denied,* 474 U.S. 1101, 106 S.Ct. 883, 88 L.Ed.2d 918 (1986); *Zorzi v. County of Putnam,* 30 F.3d 885, 896 (7th Cir.1994); *Rendish v. City of Tacoma,* 123 F.3d 1216, 1221 (9th Cir.1997); *Martin v. City of Del City,* 179 F.3d 882, 889 (10th Cir.1999). The Seventh and Ninth Circuits appear to have written the most on the topic. The primary rationale these courts follow is that there is no hierarchy among the rights protected by the First Amendment. *See Rendish,* 123 F.3d at 1222; *Belk v. Town of Minocqua,* 858 F.2d 1258, 1261 (7th Cir.1988). Currently, it appears that only the Third and Sixth Circuits follow a different rule. In *San Filippo v. Bongiovanni,* 30 F.3d 424, 439 (3rd Cir.1994), *cert. denied,* 513 U.S. 1082, 115 S.Ct. 735, 130 L.Ed.2d 638 (1995), the Third Circuit addressed the issue of whether "there are contexts in which the petition clause protects values additional to those protected by the speech clause." It concluded:

> The first amendment's petition clause imposes on the United States an obligation to have at least some channel open for those who seek redress for perceived grievances.... [W]hen government—federal or state—formally adopts a mechanism for redress of those grievances for which the gov-

ernment is allegedly accountable, it would seem to undermine the Constitution's vital purpose to hold that one who in good faith files an arguably meritorious "petition" invoking that mechanism may be disciplined for such invocation by the very government that in compliance with the petition clause has given the particular mechanism its constitutional imprimatur.

*Id.* at 442. The Sixth Circuit held, on other grounds in *Gable,* that the "public concern" test should not be read into the petition clause because the Supreme Court had included— within the scope of the petition clause—complaints "respecting resolution of [a party's] business and economic interests ...." *Gable,* 201 F.3d at 771 (quoting *California Transp. v. Trucking Unlimited,* 404 U.S. 508, 510, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972)); *but cf. Valot v. Southeast Local Sch. Dist. Bd. of Educ.,* 107 F.3d 1220, 1226 (6th Cir.1997), *cert. denied,* 522 U.S. 861, 118 S.Ct. 164, 139 L.Ed.2d 108 (1997) (holding speech does not generally touch on matter of public concern, as that requirement has been interpreted, where its aim is to air or remedy grievances purely of a personal nature). Given the scope the Supreme Court defined, the Sixth Circuit held that the petition clause itself is not generally limited to matters of "public concern" but includes a party's private business interests. *Id.*

12. Pratt essentially argues that his wrongful termination and his action to redress that wrong were of public concern because the LCPO was a public agency, Pratt was a public figure, the public is concerned about who leads its public agencies, and the press followed the course of this dispute. In other words, Pratt argues, by virtue of holding a "high profile" public office, a public employee's personal concern over retaining his or her job automatically meets the public concern test. We reject his contention.

position within the LCPO. The decision was based on performance evaluations having nothing to do with his exercise of a constitutional or federal right. Because this action, from its inception, involved only a matter of Pratt's personal interest (his employment), it cannot serve as a basis for a First Amendment-based section 1983 claim. Thus, to the extent that Pratt's suit is based on alleged retaliation for his exercise of rights protected by the petitions clause, it fails.

[¶ 24] For all the foregoing reasons, the judgment of the Superior Court must be vacated and this matter remanded for the entry of a summary judgment in favor of Ottum, Quinn, and Thompson because they are entitled to a qualified immunity.

The entry is:

Judgment vacated. Remand for entry of judgment in favor of defendants Ottum, Thompson, and Quinn.