STATE OF MAINE
CUMBERLAND, ss

STATE OF MAINE
Cumberland. ss. Clerk's Office

JUN 29 2015

RECEIVED

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-14-336

MICHAEL PELLETIER,

Plaintiff

v.

ORDER ON MOTION
TO DISMISS

LEWISTON AUBURN WATER
POLLUTION CONTROL AUTHORITY,
CLAYTON M. RICHARDSON, and
IRENE ASSELIN,

Defendants

Plaintiff Michael Pelletier is an employee of defendant Lewiston Auburn Water Pollution Control Authority. He alleges that he was never told he could join the Maine Public Employees Retirement System ("MPERS") plan and that defendants intentionally concealed from him the fact that he could become a member since he began working in 1999. Mr. Pelletier brings seven counts: fraud and conspiracy to commit fraud (count I); breach of contract (count II); due process violation under 42 U.S.C. § 1983 (count III); administrative review under M.R. Civ. P. 80B (count IV); wages earned claim under 26 M.R.S. § 626-A (count V); *quantum meruit* (count VI); and equitable estoppel (count VII). Defendants have moved to dismiss all counts. For the following reasons, the motion is granted in part and denied in part.

Facts

The following facts are alleged in the complaint and taken as true for deciding defendants' motion to dismiss. Mr. Pelletier began working for the Lewiston/Auburn Water Pollution Control Authority ("the Authority") in April

1999. (Compl. ¶ 1.) The Authority is a non-profit entity tasked with treating and disposing of wastewater from Lewiston and Auburn. (Compl. ¶ 2.) Defendant Clayton Richardson has been Superintendent of the Authority since before Mr. Pelletier was hired. (Compl. ¶ 3.) Defendant Irene Asselin was an employee with the Authority from before Mr. Pelletier was hired until 2007. (Compl. ¶ 4.)

As a "Participating Local District," the Authority maintained a retirement plan under a contract with MPERS to provide coverage for eligible employees who elected to become members under the plan.[1] (Compl. ¶¶ 6, 8.) As more employees joined the plan, the Authority's "employer share" of the costs of the plan increased. (Compl. ¶ 8.) Employees are also required to contribute an "employee share" under the program, which is deducted by the Authority from members' paychecks. (Compl. ¶ 7.) Mr. Pelletier was eligible to become a member of the MPERS plan. (Compl. ¶ 7.)

The Authority did not inform Mr. Pelletier that the plan existed or that he was entitled to enroll. (Compl. ¶ 13.) As a result, the Authority has never contributed its employer's share, and Mr. Pelletier's employee's share has never been deducted from his paychecks. (Compl. ¶ 13.)

The Authority began considering whether to opt out of MPERS as early as March 22, 1996 when the Board of the Authority stated that they should consider not offering membership in the plan. (Compl. ¶ 19(a).) That April, the Board reiterated that it may be wise to encourage new employees not to join MPERS. (Compl. ¶ 19(b).) The following year in April 1997, the Board announced that the Authority should make an effort to "move away" from the MPERS plan and

---

1 The Authority's employees are also covered by the Social Security Act, which makes membership in MPERS optional. *See* 5 M.R.S. § 18252 (2014).

gave Mr. Richardson discretion in accomplishing that task. (Compl. ¶ 19(c).) Before Mr. Pelletier was hired in April 1999, Ms. Asselin told Mr. Pelletier in an interview that membership in MPERS was not available to him. (Compl. ¶ 19(d).) Ms. Asselin and Mr. Richardson made similar statements to a prospective employee in June 1999 and maintained that position for all new hires. (Compl. ¶ 19(e)-(f).)

In 2008, the Authority hired a new employee and did not offer membership in MPERS to that employee. (Compl. ¶ 19(g).) The employee protested and was eventually offered membership but was told by Candace Taylor, another employee at the Authority, that "no one is supposed to get that anymore" and that the employee "will be the last one." (Compl. ¶ 19(h).) Thereafter the Authority continued to deny new hires the opportunity to join MPERS. (Compl. ¶ 19(k)-(l).)

On May 25, 2010, Mr. Pelletier submitted an MPERS membership form stating that he wanted to enroll. (Compl. ¶ 19(i).) Mr. Pelletier believes that an employee of the Authority altered his application to reflect that Mr. Pelletier was only seeking enrollment in the life insurance part of MPERS and not the retirement plan. (Compl. ¶ 19(i).)

On August 6, 2012, MPERS informed the Authority that the Authority may not have been consistently offering MPERS membership to eligible employees. (Compl. ¶ 19(m).) MPERS instructed the Authority that if it no longer wished to offer MPERS membership to employees, it must withdraw from participation. (Compl. ¶ 19(m).)

Mr. Pelletier alleges that he discovered the Authority's fraudulent conduct in September 2012. (Compl. ¶ 26.) On October 4, 2012, Mr. Richardson told Mr.

3

Pelletier that he should have been allowed to become a member of MPERS in the past but nevertheless refused to allow Mr. Pelletier to enroll on that day. (Compl. ¶ 19(n).) Mr. Richardson falsely told MPERS that Mr. Pelletier had been offered the opportunity to join the retirement plan when he was hired. (Compl. ¶ 19(o).) On December 31, 2013, an investigation by MPERS found that the Authority did not advise Mr. Pelletier that he could join MPERS at the time he was hired. (Compl. ¶ 19(r).)

Mr. Pelletier submitted an application to join the MPERS retirement plan on October 4, 2012. (Compl. ¶ 19(s).) He has since submitted two more applications, one on June 30, 2014 and one on July 10, 2014. (Compl. ¶ 19(s).) Mr. Richardson has refused to process the applications. (Compl. ¶ 19(s).) Mr. Pelletier filed his complaint on July 29, 2014.

Analysis

1. Standard of Review

On review of a motion to dismiss for failure to state a claim, the court accepts the facts alleged in plaintiff's complaint as admitted. Saunders v. Tisher, 2006 ME 94, ¶ 8, 902 A.2d 830. The court "examine[s] the complaint in the light most favorable to plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." Doe v. Graham, 2009 ME 88, ¶ 2, 977 A.2d 391 (quoting Saunders, 2006 ME 94, ¶ 8, 902 A.2d 830). "For a court to properly dismiss a claim for failure to state a cause of action, it must appear 'beyond doubt that [the] plaintiff is entitled to no relief under any set of facts that might be proven in support of the claim.'" Dragomir v. Spring Harbor Hosp., 2009 ME 51, ¶ 15, 970 A.2d 310 (quoting Plimpton v. Gerrard, 668 A.2d 882, 885 (Me. 1995)).

4

## 2. Overview

In their motion to dismiss, defendants make three primary arguments: (1) plaintiff's claims are barred by the applicable statute of limitations, (2) defendants are immune from suit under the Maine Tort Claims Act, and (3) plaintiff has failed to state a claim on which relief can be granted for each individual count of the complaint.[2] The court will first address defendants' statute of limitations and Maine Tort Claims Act arguments. The court will then address each individual count in the complaint to determine whether plaintiff has stated a claim.

## 3. Statute of Limitations

Defendants first argue that the applicable statutes of limitations bar Mr. Pelletier's claims. Maine's general statute of limitations for civil claims is six years.[3] 14 M.R.S. § 752 (2014). In cases of fraud, the statute of limitations begins to run "when the potential plaintiff discovers that she has a cause of action or when she *should have* discovered it in the exercise of due diligence and ordinary prudence." Efstathiou v. Aspinquid, Inc., 2008 ME 145, ¶ 17, 956 A.2d 110 (emphasis in original).

Mr. Pelletier filed his complaint on July 29, 2014. Defendants argue that Mr. Pelletier should have discovered that he was eligible to enroll in MPERS before July 29, 2008 and therefore all of his claims are barred by the statute of limitations. Mr. Pelletier has alleged that employees of the Authority, including

---

2 Defendants also argue that the court is without jurisdiction to hear plaintiff's claim for "administrative review" and any claim barred by the Maine Tort Claims Act. This jurisdictional argument is subsumed by the court's analysis on defendants' other arguments.

3 There are different filing deadlines for plaintiff's Maine Tort Claims Act and Rule 80 claims. The court addresses these deadlines separately.

5

Mr. Richardson and Ms. Asselin, explicitly lied to him about whether he could join the retirement plan. He alleges that they told prospective employees and told others at the Authority that new hires were not eligible to enroll from the time he was hired up to the present. According to the complaint, Mr. Pelletier did not discover the Authority's alleged fraud until September 2012. Given these allegations and the absence of evidence that Mr. Pelletier should have known that he could enroll in MPERS at any other specific time, the court cannot conclude at this stage that Mr. Pelletier's claims are barred by the statute of limitations.[4]

### 4. Maine Tort Claims Act Notice Requirement

Defendants next argue that count I of Mr. Pelletier's complaint must be dismissed under the Maine Tort Claims Act because Mr. Pelletier was required to provide notice to the Authority, the government entity, within 180 days of the discovery of the cause of action. 14 M.R.S. § 8107 (2014). Defendants are correct about the notice requirement, however, the Maine Tort Claims Act only applies to actions for damages. See 14 M.R.S. § 8103 (providing immunity "on any and all tort claims seeking recovery of damages"). Mr. Pelletier argues that, despite his demand for compensatory damages in his complaint, he may only be entitled to equitable relief under count I. (Pl.'s Opp. Mem. at 15.) Mr. Pelletier goes on to argue that the cause of action may not have even accrued yet because he will not

---

4 Mr. Pelletier also argues that he has alleged facts that occurred within the six-year statute of limitations for each individual cause of action and that the Authority is equitably estopped from asserting the statute of limitations in this case. Given the court's conclusion on this issue, the court need not address these arguments.

suffer an actual injury until he retires.[5] See Day v. Town of Baileyville, WASHCV-2012-9, at 17 (Me. Super. Ct., Wash. Cnty., Apr. 25, 2014) (cause of action did not accrue until plaintiff stopped working for government entity). Mr. Pelletier does not dispute defendants' argument that he has failed to file a timely notice under the Maine Tort Claims Act. Thus, Mr. Pelletier is not entitled to recover money damages. The court will consider whether the complaint states a claim for fraud below.

5. Count I – Fraud and Conspiracy to Commit Fraud

Defendants challenge whether Mr. Pelletier has stated a claim of fraud. To state a claim for fraud, a plaintiff must allege:

(1) that [one party] made a false representation;
(2) of a material fact;
(3) with knowledge of its falsity or in reckless disregard of whether it is true of false;
(4) for the purpose of inducing [another party] to act in reliance upon it; and
(5) [the other party] justifiably relied upon the representation as true and acted upon it to [its] damage.

Flaherty v. Muther, 2011 ME 32, ¶ 45, 17 A.3d 640. The circumstances surrounding the alleged fraud must be "stated with particularity." M.R. Civ. P. 9(b). This standard does not ask "whether the complaint sets out a textbook definition of fraud but whether defendant is fairly apprised of the elements of the claim." TD Banknorth, N.A. v. Hawkins, 2010 ME 104, ¶ 23, 5 A.3d 1042 (quoting 1 Field, McKusick & Wroth, Maine Civil Practice § 9.2 at 221 (2d ed. 1970)).

---

5 Defendants have not moved to dismiss on ripeness grounds. The court will reserve judgment on the ripeness issue until the parties have an opportunity to fully brief the arguments.

7

Mr. Pelletier alleges that he was falsely told in his employment interview that he would not be able to enroll in MPERS. The Authority made the statement to Mr. Pelletier and other employees so they would not enroll in that retirement plan. Mr. Pelletier relied on the information by not enrolling in MPERS even though he was eligible. Defendants argue that the only alleged false statement made to Mr. Pelletier was in an employment interview, before he was eligible to enroll in MPERS, but for purposes of a fraud claim it is irrelevant whether Mr. Pelletier could have enrolled in the program at the time the false statement was made. Mr. Pelletier has alleged sufficient facts to meet the particularity standard for pleading fraud.

6. Count II – Breach of Contract

Count II of Mr. Pelletier's complaint alleges breach of contract. Mr. Pelletier argues that he is a third party beneficiary of a contract between the Authority and MPERS. Maine courts look to the Restatement (Second) of Contracts for guidance on third party beneficiary claims. F.O. Bailey Co. v. Ledgewood, Inc., 603 A.2d 466, 468 (Me. 1992). Under the Restatement, only an intended beneficiary of a contract may sue to enforce the contract. Restatement (Second) of Contracts § 304 (1981). A beneficiary of a contract is an intended beneficiary "if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties" and:

    (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
    (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

8

Id. § 302. These principles also apply to government contracts.[6] Id. § 313.

The first issue is whether Mr. Pelletier has a right to performance based on the intent of the Authority and MPERS in providing retirement plans to participating local district employees. That intent is clear from statute: "The purpose of the Participating Local District Retirement Program is to provide retirement allowances and other benefits under this chapter for employees of participating local districts." 5 M.R.S. § 18200. Thus, the explicit intent of the program is to benefit employees like Mr. Pelletier. The next issue is whether the complaint alleges that there was any breach of contract on the part of the Authority.

Mr. Pelletier relies on 5 M.R.S. § 18252 to argue that the Authority breached its obligation to notify him of his right to join the MPERS plan. This section has been amended at least twice since Mr. Pelletier began working for the Authority. Initially, the law allowed a new employee to join the MPERS plan at the beginning of employment "or on any anniversary of the beginning of employment." P.L. 2007, ch. 490, § 1. Beginning March 7, 2008 the law changed so that an employee could join MPERS "at any time after beginning employment." Id. Finally, on July 12, 2010 the current version of the law went into effect and requires a person to elect whether to join the MPERS plan "at the time of initial hire or on the date of first eligibility to participate." 5 M.R.S. § 18252 (2014). Once an employee makes a choice, it "is irrevocable with respect to all subsequent employment with the same employer . . . ." Id. The language of each of these

6 The Restatement carves out an exception to liability for entities that contract with the government to provide a service for the public generally. In this case, the contract between MPERS and the Authority is not for the general public but for the Authority's employees.

9

versions of the statute has been interpreted to carry an implicit obligation on the employer to inform the employee of the right to participate in the MPERS retirement plan. See Kennebec County v. Me. Pub. Employees Ret. Sys., 2014 ME 26, ¶¶ 34-35, 86 A.3d 1204 (Silver, J., dissenting); Day v. Baileyville, WASHCV-2012-9, at 14 (Me. Super. Ct., Wash. Cnty., Apr. 25, 2014).

Mr. Pelletier alleges that he was never notified of his ability to enroll in MPERS at any time. In fact, he alleges that employees of the Authority falsely told him that he was not eligible to join MPERS. Accepting these allegations as true, the Authority breached its obligation to provide Mr. Pelletier notice of his eligibility to enroll in the MPERS plan. Count II will not be dismissed.

7. Count III – Section 1983 Claim

a. Property Interest

Mr. Pelletier asserts a claim under 42 U.S.C. § 1983, arguing that defendants violated his due process rights under the Fourteenth Amendment by denying him his statutory right to enroll in MPERS. "To state a procedural due process claim under § 1983, the plaintiff must allege facts which, if true, establish that the plaintiff (1) had a property interest of constitutional magnitude and (2) was deprived of that property interest without due process of law." Clukey v. Town of Camden, 717 F.3d 52, 54-55 (1st Cir. 2013). Defendants first dispute whether Mr. Pelletier has a valid property interest for the purposes of his due process claim.

Certain state law entitlements are considered constitutionally protected property interests under the Due Process Clause. See Merrill v. Me. Pub. Employees Ret. Sys., 2014 ME 100, ¶ 21, 98 A.3d 211 ("[T]he continued receipt of the benefit of participating in the [life insurance program] is, for purposes of due

10

process, a statutorily created property interest."). In deciding whether a particular entitlement is constitutionally protected, the court looks to whether, under state law, government officials have discretion to withhold the entitlement. Clukey, 717 F.3d at 56.

Defendants argue that because Mr. Pelletier is not a member of MPERS he has no property interest in the retirement benefits. This argument misses the crux of the complaint. Mr. Pelletier alleges that he is not a member of MPERS *because* he was improperly denied the opportunity to enroll in the program without any notice or other process. Although there is an element of discretion in the statute, it is the employee who has discretion to enroll. If an eligible employee applies for the MPERS plan there is no discretion on the part of the employer or MPERS itself to deny enrollment. 5 M.R.S. §§ 18252, 18256. Mr. Pelletier was therefore denied access to a statutorily created property right.

The second part of a procedural due process inquiry is to determine "what process is due." Merrill, 2014 ME 100, ¶ 22, 98 A.3d 211. This involves balancing the property interest at stake, the risk of erroneous deprivation of that interest, and the burden on the government to provide additional process. Id. Simple notice of the opportunity to enroll in the MPERS plan may be sufficient due process in this case. Based on the allegations in the complaint, however, it appears that Mr. Pelletier was entitled to join the MPERS plan, he was not provided any notice of his right to join, and the Authority continues to refuse to enroll him in the plan. Mr. Pelletier has alleged a valid procedural due process claim under 42 U.S.C. § 1983. Because this claim survives, Mr. Richardson and Ms. Asselin will not be dismissed as defendants.

11

b. Qualified Immunity

Defendants argue that, even if Mr. Pelletier has stated a claim under 42 U.S.C. § 1983, Mr. Richardson and Ms. Asselin are nevertheless entitled to qualified immunity. Under 42 U.S.C. § 1983, "[g]overnment officials may be sued in their personal capacities for damages for actions they take in their official capacity or otherwise, provided that while acting under color of state law, they cause the deprivation of a federal right." Pratt v. Ottum, 2000 ME 203, ¶ 16, 761 A.2d 313. Government officials are entitled to qualified immunity, however, even if there has been a violation of a federal right, if the right was not "clearly established" at the time of the violation. Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009).

Mr. Pelletier alleges that the Authority and its employees intentionally lied to him by stating that he was not eligible to enroll in the MPERS plan. Defendants cite to no authority that would allow a participating local district, like the Authority, to deny membership to an employee. By refusing to enroll Mr. Pelletier, defendants denied him a state entitlement, which is a protected property interest, without due process. Accordingly, the court cannot conclude on this record that the right was not "clearly established."

8. Count IV – Rule 80B Claim

M.R. Civ. P. 80B allows a party to file an action in the Superior Court for review of government action or refusal to act, when the right of review "is provided by statute or is otherwise available by law." M.R. Civ. P. 80B(a). In this case, because there is no statutory right of review, the court will focus on whether review is "otherwise available by law." "Review is deemed 'otherwise available by law' if it is in the nature of that formerly available under the

12

common law extraordinary writs, such as certiorari, mandamus or prohibition, adapted to current conditions." Lyons v. Bd. of Dirs. of Sch. Admin. Dist. No. 43, 503 A.2d 233, 236 (Me. 1986).

Mr. Pelletier argues that the relief requested is in the nature of an action for writ of mandamus and therefore Rule 80B review is available. Specifically, Mr. Pelletier claims that he applied for membership in the MPERS plan on June 30, 2014 and July 10, 2014 but the Authority failed to process his applications as required by law. "[M]andamus lies to compel governmental performance of a strictly ministerial act, that the applicant, otherwise without remedy is entitled to have performed." Casco N. Bank, N.A. v. Bd. of Trs. of Van Buren Hosp. Dist., 601 A.2d 1085, 1087 (Me. 1992).

The problem with plaintiff proceeding under the June and July 2014 applications is that, under current law, Mr. Pelletier was not entitled to join the MPERS plan.[7] Under current law, as discussed above, the employee must make an election at the time of hire or date of first eligibility. 5 M.R.S. § 18252. Mr. Pelletier cannot rely on any "ministerial act" that he was entitled to have performed. Although Mr. Pelletier may be entitled to relief under other counts of his complaint, he cannot proceed under Rule 80B. Count IV of the complaint can be dismissed.

9. Count V – Unpaid Wages Claim

---

[7] Assuming Mr. Pelletier's Rule 80B challenge is premised on prior versions of 5 M.R.S. § 18252, the challenge is untimely. Mr. Pelletier concedes that he was aware he was eligible to join MPERS by October 2012, and applied for membership at that time. A Rule 80B claim must be filed within 30 days of final government action or 6 months in the case of a failure to act. M.R. Civ. P. 80B(b). Assuming the time period was tolled until October 2012, Mr. Pelletier's complaint was still filed after the filing deadline for a Rule 80B claim.

An employee has a right of action for unpaid wages under 26 M.R.S. § 626-A (2014). The term "unpaid wages" is not defined by statute but has been interpreted by the Law Court to mean "precisely what [is] owing when an employer does not pay an employee for work." In re Wage Payment Litig. v. Wal-Mart Stores, Inc., 2000 ME 162, ¶ 12, 759 A.2d 217. Although Mr. Pelletier alleges that he was improperly excluded from enrolling in the retirement plan, there is no dispute that he is not a current member of MPERS. He is therefore not entitled to the "employer's share" of payments under the plan. Although the Authority's conduct may have been unlawful and Mr. Pelletier may be entitled to other relief, he cannot bring a claim for "unpaid wages" when he is not currently a member of the MPERS plan and has never paid his "employee's share" into the system.

There is another problem with Mr. Pelletier's unpaid wages claim. As the court noted in Day v. Baileyville, the MPERS benefits are not due until after Mr. Pelletier retires. WASHCV-2012-9, at 16 (Me. Super. Ct., Wash. Cnty., Apr. 25, 2014).Thus, even if Mr. Pelletier could bring a claim for unpaid wages, that claim would likely not be ripe until Mr. Pelletier retires and attempts to collect his benefits. Mr. Pelletier even acknowledges that the claim is not ripe in his brief, stating "[w]ith regard to § 626, this action cannot be brought until the employee has left the employment of the employer." (Pl.'s Opp. Mem. at 21.) Count V can be dismissed.

### 10. Count VI – *Quantum Meruit*

*Quantum meruit* allows a plaintiff to recover "for services or materials provided under an implied contract which is a contract inferred from the conduct of the parties." Runnells v. Quinn, 2006 ME 7, ¶ 10, 890 A.2d 713. "A

14

valid claim for *quantum meruit* requires that "(1) services be rendered to the defendant by the plaintiff; (2) with the knowledge and consent of the defendant; and (3) under circumstances that make it reasonable for the plaintiff to expect payment." Id. With regard to the third element of the claim, the plaintiff must have a "contemporaneous understanding" that compensation is anticipated for the work performed. See Siciliani v. Connolly, 651 A.2d 386, 387 (Me. 1994).

Mr. Pelletier's *quantum meruit* claim fails because the complaint establishes that he did not have any expectation or "contemporaneous understanding" of compensation in the form of MPERS enrollment. The facts alleged in the complaint establish that the Authority notified Mr. Pelletier that he would not be enrolled as a member. When Mr. Pelletier was hired, he knew that he would not be enrolled in the retirement plan and he never expected to receive MPERS retirement benefits. Although the Authority's conduct may have been unlawful, the allegations in the complaint do not support a claim for *quantum meruit*. Count VI can be dismissed.

### 11. Count VII – Equitable Estoppel

Mr. Pelletier concedes that count VII of the complaint does not state an independent claim for relief. (Pl.'s Opp. Mem. at 23.) Count VII can therefore be dismissed.

### CONCLUSION

Mr. Pelletier has alleged sufficient facts to state a claim for fraud and extend the statute of limitations on his other claims. He has also stated a claim for breach of contract as a third-party beneficiary and a section 1983 claim for violation of his procedural due process rights. Mr. Pelletier's other claims fail as a matter of law and must be dismissed.

15

The entry is:

Defendants' motion to dismiss is denied as to counts I, II, and III of the complaint;

Plaintiff is barred from recovering money damages under count I of the complaint;

Defendants' motion to dismiss is granted as to counts IV, V, VI, and VII.

Date: _____ June 30, 2015 _____

Roland A. Cole
Chief Justice, Superior Court

Plaintiff-Donald Fontaine Esq/Robert Mittel
  Esq
Defendants-Daniel Nuzzi Esq

16