STATE OF MAINE

LINCOLN, ss.

RECEIVED AND FILED
LINCOLN COUNTY SUPERIOR COURT

DEC 20 2004

SHARON SIMPSON
CLERK

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-03-027

FREDRIC I. LEWIS,

Plaintiff

v.

TOWN OF BOOTHBAY, *et al.,*

Defendants

**ORDER ON MOTIONS**

This matter is before the court on multiple procedural motions and motions for summary judgment. The motions for summary judgment will be addressed in separate decisions.

Plaintiff Fred Lewis was an industrial arts teacher at Boothbay Harbor High School ("the high school") for 23 years beginning in 1977. On December 20, 2001, after being incorrectly identified as the target of accusations of sexual misconduct by a female former student at the high school, plaintiff submitted a letter of resignation, effective June 30, 2002, that plaintiff avers was submitted under threat of termination.

In late November or some time up to December 14, 2001,[1] Jack Tourtillotte, the principal of the high school, and Steve Clark, the Chief of Police in Boothbay Harbor, conferred regarding allegations against plaintiff of improper sexual contact with the former student and an unrelated complaint for harassment/criminal trespass.

---

[1] The parties do not agree regarding how the initial conversation between Mr. Tourtillotte and Chief Clark was initiated. Defendants Town of Boothbay Harbor and Chief Clark assert that high school principal Tourtillotte contacted the police department in early December 2001 to inquire "if there was an investigation involving a teacher at the high school." According to defendants Boothbay harbor Community School District, principal John Tourtillotte and Superintendent of Schools Mark Keegan, Mr. Tourtillotte "spoke with Steven Clark . . . about two issues involving Mr. Lewis."

Plaintiff points to the variance between the depositions of Tourtillotte and Chief Clark concerning when these calls began and whether one or two investigations of Mr. Lewis were underway at the time.

A police officer, who had been contacted by a former student, identified the person accused of misconduct as a "shop teacher" at the High School. Mr. Lewis was the only shop teacher at the High School for approximately 23 years.

Between the time Mr. Lewis was initially informed of the sexual misconduct charge via letter on Friday, December 14, 2001, and a meeting on Monday, December 17, 2001, principal Tourtillotte and Superintendent of Schools Mark Keegan (together with the Boothbay Harbor School District, hereinafter "school defendants") were informed by Chief Clark that Fred Lewis was <u>not</u> the person the former student alleged committed sexual misconduct, but another former school employee with the same last name.

Despite being made aware, by Chief Clark, that plaintiff was not the person who had been identified by the former student as the perpetrator of sexual misconduct, defendants Keegan and Tourtillotte decided plaintiff should be put on administrative leave and accepted plaintiff's letter of resignation.

At a meeting on December 20, 2001, arranged, according to school defendants, after plaintiff called Superintendent Keegan to say he wanted to meet and discuss retiring,[2] plaintiff submitted his letter of retirement.

There is deep disagreement concerning the motivation for the continuation of the investigation by the school. The school defendants assert that due to a criminal trespass charge and the fact that Mr. Tourtillotte had discovered "other matters of concern"[3] they felt it necessary to continue the investigation. Defendants Clark and Boothbay

---

[2] In both plaintiffs opposition to school defendants' SMF and amended opposition, filed on July 16, 2004 along with a motion to amend opposition to school defendants' SMFs, plaintiff denies DSMF 18, but does not address whether or why he voluntarily retired.

[3] This is an apparent reference to old allegations of staring at a students breasts in his shop class a decade earlier and having an affair with a student who had attending the high school, but had never been in Mr. Lewis' classes. The affair, according to Mr. Lewis, began ten years after the student's tenth college reunion. *See*, Plaintiff's Amended Opposing SMF at ¶ 18.

Harbor ("town defendants") assert that they never confirmed to the school defendants that plaintiff was named as the alleged perpetrator of the sexual misconduct.

Besides the deep disagreement concerning the facts surrounding the investigation and the motivation for the investigation and whether the letter of retirement was voluntary, the ascertainment of the facts in this matter is hindered by an apparent mistake in both the plaintiff's opposing statement of material facts not in dispute, submitted pursuant to M.R. Civ. P. 56(h)(2) and filed on July 13, 2004, and plaintiff's proposed amended version of same filed on July 16, 2004. The error appears to begin with plaintiff's opposition ¶ 18. Whereas the school defendants list twenty-five statements of material fact, plaintiff lists twenty-six opposition statements (in addition to fifty five additional statements of material facts).

Although the school defendants assert that plaintiff knows of no one other than Mr. Tourtillotte and Mr. Keegan who knew of the allegations against him, plaintiff asserts that a number of other people were informed of the allegations.[4]

Plaintiff, who now works part time maintaining power products, filed a Complaint in seven counts (defamation, intentional infliction of emotional distress, interference with contract, vicarious liability, false light, due process and punitive damages) and demand for a jury trial with this court.

On April 1, 2004 plaintiff filed a motion to enlarge discovery deadline of April 26, 2004 by sixty days.[5] The school defendants filed timely objection to this motion on April 12, 2004 and the town defendants filed timely opposition on April 20, 2004.

---

[4] Again, these SMF by defendant are controverted with misnumbered opposing statements.

[5] This motion was not accompanied by a notice, required pursuant to M.R. Civ. P. 7(b)(1)(A) that opposition must filed within twenty one days. Plaintiff also failed to include a statement, pursuant to M.R. Civ. P. 7(b)(4), stating whether this motion was opposed, unopposed or the position of opposing party cannot be determined.

The town defendants filed a motion for summary judgment on all counts on June 9, 2004. School defendants filed a motion for summary judgment on all counts the same day. On July 13, 2004, the town defendants filed an unopposed motion for continuance of trial, trial conference & pretrial deadline.

On July 13, 2004, plaintiff filed timely opposition to both motions for summary judgment and a motion to strike school defendants unopposed statement of material facts.[6] Three days later, on July 16, 2004, plaintiff filed a motion to amend the opposing statement of material facts filed in opposition to the school defendants MSJ. That same day, plaintiff also filed a motion titled "Motion to Amend Opposing Statement of Material Facts in Opposition to Town Defendants' Motion for Summary Judgment" that is apparently identical in its contents to the motion to amend facts in opposition to school defendants MSJ referenced above with the addition of one sentence (discussed below). Both motions refer to the school defendant's MSJ in the body of the motion but apparently the filing whose title refers to the Town defendants is directed toward them.[7]

A joint and unopposed motion for extension of deadline to file Reply to pending motions for summary judgment and a motion to extend the page the seven page limit on Reply briefs contained in M.R. Civ. P. 7(f) was filed on July 16, 2004.[8]

### Plaintiff's Motion to Enlarge Discovery Deadline

Essentially this is a discovery dispute related to scheduling of depositions being conducted as a motion to enlarge. The discovery deadline, set in the scheduling order

---

[6] This motion was not accompanied by a draft order or a 21-day notice.

[7] These motions to amend are offered with the explanation that "[d]ue to time constraints, counsel was unable to fully edit grammatical and typographical errors."

[8] A draft order was submitted with this motion. This motion did not contain a twenty-one day notice.

of August 26, 2003, was April 24, 2004. Both sides cite the difficult procedural history of this case and grievances against opposing counsel for non-responsiveness.

Inasmuch as time has mooted the functional effect of granting this motion and this court has continued to issue discovery orders well into May, *see*, Order, May 14, 2004, (Studstrup, J.), and neither party has shown prejudice would result, this motion should be granted.

### Town Defendants Motion for Continuance of Trial, Trial Conference & Pretrial Order Deadlines

The Town defendants request this continuance, effecting removal of this case from the August 5th through September 3rd trial list, canceling the trial management conference scheduled for August 2, 2004 and vacating the July 6, 2004 pretrial order.

Defendant is requesting this continuance, without opposition, so that they may know the outcome of their summary judgment motion before proceeding further. It is clear that should defendant not prevail in their immunity defense they anticipate an interlocutory appeal on that issue.

> The availability of the qualified immunity defense is a question of law. . . Pursuant to the death-knell exception to the final judgment rule, we will hear a government official's interlocutory appeal from an order denying a motion for summary judgment in which a claim of immunity is raised.

*Pratt v. Ottum*, 2000 ME 203, ¶ 15, 761 A.2d 313, 318.

Granting this unopposed motion would allow defendant to make that interlocutory appeal should it be necessary and would serve to aid conservation of judicial resources.

### Plaintiff's Motion Strike Defendant's SMF

Plaintiff moves to strike eight statements of material fact submitted by school defendant with their MSJ. All of the SMF cited by plaintiff are portrayed as

unsupported by the record reference. Two of the SMF (¶¶ 5 & 8) are also attacked as hearsay.

Plaintiff cites M.R. Civ. P. 56(h)(4) and *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 6, 770 A.2d 653, 656:

> A statement of material facts must be numbered, concise, and contain specific record references to each proffered fact. . . The record references must refer to evidence of a quality that could be admissible at trial. M.R. Civ. P. 56(e).

Although in this motion plaintiff has asked that these eight SMFs be stricken, in plaintiffs opposing statement of material facts, filed the same day, plaintiff only "objects"[9] to two of these SMFs and denies four others.[10] Two of the SMF that plaintiff seeks to strike in this motion were not denied, but merely qualified, in his opposing statement of material facts filed the same day.[11]

Apparently what plaintiff is seeking to do here is use a motion to strike as a sort of extra loud denial of some of defendants' SMF. This method of responding to a SMF is not in keeping with or anticipated by the M.R. Civ. P. and in this case in particular lacks internal logic.

### Plaintiff's Motion to Amend Statements of Material Fact Opposing School Defendants SMF In Support of MSJ

Plaintiff filed this motion averring that "due to time constraints "counsel was unable to fully edit grammatical and typographical errors in Plaintiffs [sic] Opposing Statement of Material Facts." The time constraints under which plaintiff must function

---

[9] Objection is not anticipated in the relevant rule, M.R. Civ. P. 56(h)(2) ("The opposing statement shall *admit, deny* or *qualify* the facts by reference to each numbered paragraph of the moving party's statement of material facts . . ."). Emphasis added.

[10] Plaintiff actually asserts that he objects to three, but his objection to DSMF ¶ 22 is likely a mistake as somewhere around ¶18 plaintiff's responses no longer lined up with defendants' SMF. *See*, Factual & Procedural Background detailed in this memorandum at page 2 above.

[11] Once again, it is unclear if plaintiff's "Qualify" stated in opposition to ¶ 23 actually refers to defendants' SMF at ¶ 23.

are contained in M.R. Civ. P. 7(c)(2). Opposing party is given 21 days to file opposition to a motion. No motion to enlarge time pursuant to M.R. Civ. P. 6(b) has been filed.

Pursuant to M.R. Civ. P. 56(h)(2) plaintiff filed twenty-six statements opposing school defendants' material facts. As noted above, defendants had only filed 25 statements of material fact. The "amended" statements of material fact that were filed along with this motion on July 16, 2004, also contain 26 opposing statements. The amended opposing statements and statements of additional material facts also contain most of the spelling and grammatical errors that the original filing suffered from. For example, the persons in charge of day-to-day administration of the school are still referred to as "principles." A person named "Angle [sic] Tibbetts" is still a character in the amended opposing statements. Sentences similar to the following were apparently not deemed typographically or grammatically incorrect:

> Monday Chief Clark in person told Tourtillotte and Keegan that despite his claims in November and December 2001 that there was a July 2001 police report of inappropriate sexual conduct by Fred Lewis with a former student he had been incorrect; Fred Lewis was not the individual under investigation for inappropriate advances on a former student it was a different Lewis who worked for the school district.

POSMF at ¶ 17.

> [a]n incident he investigated himself involving a student Hodgdon and after speaking with students in the class found no substantiating evidence the [sic] Mr. Lewis looked at her breasts as she claimed and that Mr. Lewis does [sic] not make dirty jokes other students in the shop class do [sic].

*Id.* at ¶ 18.

There is no particular provision in our rules of civil procedure for amending opposing statements of material fact after the filing deadline has passed. As noted above, no motion to enlarge has been filed.

## Plaintiff's Motion to Amend Statements of Material Fact Opposing Town Defendants SMF In Support of MSJ

Although the title of this motion refers to the <u>town</u> defendants' statement of material facts, the body of the motion is identical (including referring the "School Defendants' Motion for Summary Judgment") to the motion discussed above, except for an extra paragraph. In paragraph 6 plaintiff notes that "plaintiff counsel has agreed to an extension of time for defense counsel to Reply to Plaintiff's Opposition until July 30, 2004, therefore, there is no prejudice to counsel due to the Amended Statement of Material Facts."

The Town defendants filed 40 SMF with their MSJ. Both plaintiff's filing of opposing SMF and the amended filing contain forty opposing facts and as well as 43 additional material facts. As with the motion discussed directly above, many of the opposing material facts are labeled "OBJECTION" rather than "deny" or "qualify" in the original and amended versions. Once again, as with the amendments discussed directly above, little correction of grammar and typographical errors is evident.[12]

As noted in the almost identical motion discussed above, there is no particular provision in our rules of civil procedure for amending opposing statements of material fact after the filing deadline has passed. No motion to enlarge has been filed.

## Defendants' Joint[13] Motion for Extension of Deadline for Reply Submissions to Pending Motions for Summary Judgment & Extension of Page Limitations

Defendants' Reply to plaintiff's opposition to defendants' motions for summary judgment would have been due pursuant to M.R. Civ. P. 7(e) on July 20, 2004, and would have been limited to seven pages pursuant to M.R. Civ. P. 7(f). Defendants

---

[12] The only change in this amendment is putting the word "kind" in bold letters.

[13] Although labeled a "joint motion" this motion is submitted by the town defendants and signed only by town defendants' counsel.

argue that seven days is insufficient time to address new material presented in plaintiff's additional statements of material fact.[14] Defendants also cite "complication of communication with client representatives in the midst of summer vacation."

Regarding memorandum length, defendants assert that a "seven page reply memorandum will very likely be insufficient" in this instance "given the breadth of material addressed in the briefing regarding the seven-count complaint and the immunity issues."

Defendants seek extension of time to file a reply brief to July 30, 2004, and leave to file reply memoranda that may not exceed 15 pages.

Although not labeled as such, the first part of this motion (extension of deadline) is, in essence, a motion to enlarge. *See,* M.R. Civ. P. 6(b). Since it was filed before the expiration of the period prescribed "the court for cause shown may at any time in its discretion . . . order the period enlarged if request is made before the expiration of the period originally prescribed . . ." *Id.* at (b)(1).

Regarding length of memoranda of law, the relevant rule, M.R. Civ. P. 7(f) states that memoranda of law in support of or opposing a motion to dismiss or a motion for summary judgment or a motion for injunctive relief that "[e]xcept by prior leave of the court" they are limited to twenty pages. The rule regarding reply memoranda reads in full: "No reply memorandum shall exceed 7 pages." M.R. Civ. P. 7(f).

A search of Maine case law reveals no decisions illuminating the prohibitory language regarding reply memoranda. The federal rules contain no similar requirements regarding reply memoranda.

Defendants state that plaintiff's counsel has no objection to this motion.

---

[14] This filing took place on the same day that plaintiff filed the two motions seeking to amend these additional facts, so is unlikely to be cognizant of them.

The entry will be:

Plaintiff's motion to enlarge discovery deadline is GRANTED; Town defendant's motion for continuance of trial, trial conference and pretrial order deadlines is GRANTED; plaintiff's motion to strike defendants' statement of material facts is DENIED; plaintiff's motion to amend statements of material fact opposing School defendant's statement of material fact in support of motion for summary judgment is DENIED; plaintiff's motion to amend statements of material fact opposing Town defendant's statement of material fact in support of motion for summary judgment is DENIED; defendants' joint motion for extension of deadline for reply submissions to the pending motions for summary judgment and extension of page limitations is GRANTED.

Dated: December___16___, 2004

Donald H. Marden
Justice, Superior Court


Plaintiff: Karen Wolfram, Esquire

Def. Town & Clark: Lisa Fitzgibbon Bendetson, Esquire

Def. BB Harbor School District, Et Al: Melissa Hewey, Esquire

STATE OF MAINE                                    SUPERIOR COURT
                                                  CIVIL ACTION
LINCOLN, ss.              RECEIVED AND FILED       DOCKET NO. CV-03-027
                    LINCOLN COUNTY SUPERIOR COURT ᐅ H M ‑ L W ‑ 12/20/2004

FREDRIC I. LEWIS,                DEC 2 0 2004

          Plaintiff             SHARON SIMPSON
                                    CLERK

     v.                                          ORDER ON SCHOOL
                                                 DEFENDANTS' MOTION
TOWN OF BOOTHBAY, et al.,                         FOR SUMMARY JUDGMENT

          Defendants

This matter is before the court on motion for summary judgment of defendant

Boothbay Harbor Community School District, John Tourtillotte and Mark Keegan (the

school defendants).[1]

The school defendants seek summary judgment on all counts of the complaint.

Like the town defendants, the school defendants argue both immunity pursuant to

MTCA and assert that each individual count is unsupported by law or fact or both.

Plaintiff answers the school defendants' immunity claim by pointing to the "School

leaders Professional Liability Policy" as a waiver of immunity pursuant to 14 M.R.S.A.

§ 8116 ("If the insurance provides coverage in areas where the governmental entity is

immune, the governmental entity shall be liable in those substantive areas but only to

the limits of the insurance coverage.").

The school defendants attack each count individually. Although the facts

regarding the investigation and the events and statements surrounding it remain

disputed and unclear in the parties' filings, each count is discussed.

---

[1] For procedural and factual history, see Order on Motions on multiple procedural motions dated this
date.

substantially certain that such distress would result from its conduct; that "the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community"; that the actions of the defendant caused the plaintiff's emotional distress; and that the emotional distress suffered by the plaintiff was "so severe that no reasonable [person] could be expected to endure it.

*Champagne v. Mid-Maine Med. Ctr.*, 1998 ME 87, ¶ 15, 711 A.2d 842, 847.

Defendants assert plaintiff has failed to produce evidence of emotional distress and there is no evidence of outrageous conduct by the school defendants.

As to the second issue, plaintiff has averred outrageous conduct by the defendants which are supported by statements of fact and citation to transcripts. As to whether the issue of emotional distress "so severe that no reasonable [person] could be expected to endure it," plaintiff points the realities of a "small close knit community," the effects of the rumor mill and asserts that a reasonable juror may make that inference.

The Law Court has recently stated the elements of interference with contract:

Tortious interference with a prospective economic advantage requires a plaintiff to prove: (1) that a valid contract or prospective economic advantage existed; n4 (2) that the defendant interfered with that contract or advantage through fraud or intimidation; and (3) that such interference proximately caused damages.

*Rutland v. Mullen*, 2002 ME 98, ¶ 13, 798 A.2d 1104, 1110.

Defendants assert that while plaintiff can make out the first element – namely that he had a contract; he cannot support the other elements. Defendants point to no statements of fact or record references to bolster that assertion.

Plaintiff asserts that it was specifically through intimidation and fraud that he was made to resign. Plaintiff cites record references from depositions by Mr. Tourtillotte that plaintiff was not informed about that the mistaken identification of him as a sexual misconduct suspect.

The school defendants make no specific argument on the count of vicarious liability.

The Law Court illuminated the elements of false light in a year 2000 ruling:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*Cole v. Chandler*, 2000 ME 104, ¶ 17, A.2d 1189, 1197.

"Publicity" was defined in the same ruling as "mean[ing] that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Id.*

Here, it is a close call as to whether plaintiff has met his burden of proving publicity. Defendants cite no material facts and do not dispute plaintiff's facts. Plaintiff relies on statements by Mr. Tourtillotte that "[I]t is a small community. It is a small school. And people understood that there was a situation occurring" and further that when plaintiff did not show up for school on Monday people would wonder.

Plaintiff points to a 1985 U.S. Supreme Court decision to support the proposition that when an employee has a property right to continued employment an employer cannot deprive the employee of that right without due process of law. *Cleveland Bd. of Education v. Loudermill*, 470 U.S. 532, 538 (1985).

Defendant asserts that plaintiff was not deprived of a property interest, as a mere threat of termination does not constitute deprivation of a property interest. Defendant cites a 10th circuit opinion to support the proposition that voluntary retirement does not, as a matter of law, deprive an employee of a property interest. *Parker v. Bd. of Regents,*

981 F.2d 1159 (10th Cir. 1992). Defendant supplies no pin cite, but *Parker v. Bd. of Regents,* 981 F.2d at 1162 appears to support defendants' assertion as far as it goes.[2]

The voluntariness of plaintiff's departure and the possible coercion by defendants that might have led to it remain very material facts in this case. In fact, defendants' reference, in its MSJ to the alleged "long list" of females with additional claims, citing SMF ¶ 21, speaks directly to the possibility of coercion without dispelling it in any way.

The entry will be:

> Motion for summary judgment of Boothbay Harbor Community School District, John Tourtillotte and Mark Keegan is DENIED for various reasons cited including genuine issues of material fact.

Dated: December ___10___, 2004

Donald H. Marden
Justice, Superior Court


**Plaintiff:  Karen Wolfram, Esquire**

**Def. Town & Clark:  Lisa Fitzgibbon Bendetson, Esquire**

**Def. BB Harbor School District, Et Al:  Melissa Hewey, Esquire**

---

[2] This same case also cites *Loudermill* one page earlier, for the same proposition for which plaintiff cites *Parker v. Bd. of Regents*, 981 F.2d at 1161.

STATE OF MAINE

LINCOLN, ss.

RECEIVED AND FILED
LINCOLN COUNTY SUPERIOR COURT

DEC 2 0 2004

SHARON SIMPSON
CLERK

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-03-027

FREDRIC I. LEWIS,

     Plaintiff

    v.

TOWN OF BOOTHBAY, et al.,

    Defendants

ORDER ON TOWN
DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT

This matter is before the court on motion for summary judgment brought by defendants Town of Boothbay Harbor and Chief Steve Clark.[1]

> Summary judgment is no longer an extreme remedy. It is simply a procedural device for obtaining judicial resolution of those matters that may be decided without fact-finding. Summary judgment is properly granted if the facts are not in dispute or, if the defendant has moved for summary judgment, the evidence favoring the plaintiff is insufficient to support a verdict for the plaintiff as a matter of law.

*Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18, 21-22.

Summary judgment is proper if the citations to the record found in the parties' Rule 56(h) statements demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Dickinson v. Clark*, 2001 ME 49, ¶ 4, 767 A.2d 303, 305. "A fact is material if it has the potential to affect the outcome of the case under governing law." *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, n.3, 770 A.2d 653, 655, n.3 (citing *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575). "The invocation of the summary judgment procedure does not permit the court to decide an issue of fact, but only to determine whether a genuine issue of fact exists.

---

[1] For procedural and factual history, *see* Order on Motions on multiple procedural motions dated this date.

The Court cannot decide an issue of fact no matter how improbable seem the opposing party's chances of prevailing at trial." *Searles v. Trustees of St. Joseph's College*, 1997 ME 128, ¶ 6, 695 A.2d 1206, 1209 (quoting *Tallwood Land & Dev. Co. v. Botka*, 352 A.2d 753, 755 (Me. 1976)). To avoid a judgment as a matter of law for a defendant, a plaintiff must establish a prima facie case for each element of her cause of action. *See Fleming v. Gardner*, 658 A.2d 1074, 1076 (Me. 1995).

Defendants make two broad categories of argument in this motion. First they argue that the Town and Chief Clark are immune from suit under the Maine Tort Claims Act ("MTCA"), 14 M.R.S.A. §§ 8101-8118. Next defendants attack the legal sufficiency or factual support for the individual causes of action.

Regarding the Town of Boothbay Harbor, defendants assert that the blanket of immunity conferred by section 8103 ("all governmental entities shall be immune from suit on any and all tort claims seeking recovery of damages") of the MTCA, essentially a codification of sovereign immunity, is a complete shield. Defendant avers that none of the four exceptions contained in section 8104-A(1-4) (ownership, maintenance or use of vehicles, etc, negligence in operation or maintenance of public buildings, discharge of pollutants, road construction, street cleaning or repair) apply.

The town also avers that it has not waived immunity pursuant to section 8116 by purchasing liability insurance for any substantive area in which it otherwise enjoys immunity. Defendant town supplied an affidavit from its Town Manager and its risk pool membership certificate to this effect. Defendant states as an undisputed material fact that the town "is a member of a self insured municipal pool, which, by its terms provides coverage only in those areas, which are exceptions to immunity.

Plaintiff objects to defendants' assertions regarding liability coverage as legal conclusions[2] and states that the membership certificate attached to defendant's Exhibit A does not encompass the entire provision of the liability policy. Plaintiff asserts that governmental immunity is an affirmative defense and defendant has not met the burden of proving it is not insured. Plaintiff also points to plaintiff exhibit G (School leaders professional liability policy).

Defendants rely on Mr. Pilgrim's affidavit and the express liability limit in their membership coverage certificate which states: "Coverage is limited to those areas for which governmental immunity has been expressly waived by 14 M.R.S.A. 8104-A, as limited by 14 M.R.S.A. 8104-B, and 14 M.R.S.A. 8111." The cited (and reproduced in attachment) membership certificate appears identical to the certificate cited in a 1997 Law Court decision finding no waiver of immunity by the City of Lewiston through purchase of liability insurance coverage through its participation in the Maine Municipal Association Property & Casualty Pool. *Doucette v. City of Lewiston*, 1997 ME 157, ¶ 10, 697 A.2d 1292, 1295.

Although plaintiff asserts that defendants have not attached copies of all of their insurance policies, they reference no other policy covering the town and do not reference the record in this matter. Plaintiff's exhibit G, the school leaders policy, lists the school district as a participating member, but does not mention the town itself.

Beside plaintiff's failure to demonstrate an exception to the immunity conferred on the town by the workings of the MTCA, the plaintiff's complaint does not allege any activity by the town that might have created liability except perhaps for count IV which contains a general allegation that Chief Clark was acting within his scope of

---

[2] "Conclusions of fact and law do not properly belong in an affidavit filed in support of a motion for summary judgment." *Orient v. Dwyer*, 490 A.2d 660, 662 (Me. 1985). Quoting, 10A C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 2738 at 486-89 (2d ed. 1983).

employment by the town and the town is therefore liable by the theory of respondeat superior.

Defendant argues that the MTCA contains no provision authorizing vicarious liability in an area where the town itself enjoys immunity. Defendant cites a 2001 Superior court decision from this state for persuasive authority. *Gove v. Carter*, (CV-98-249 (Me. Super. Ct., Yor. Cty., January 8, 2001) (Fritzsche, J.) ("There is also no provision in the Maine Tort Claims Act for vicarious liability."). Id. at *4. Defendant also cites a Law Court ruling stating that "[t]he supervision of governmental employees conducting discretionary functions is a discretionary act." *Chiu v. City of Portland*, 2002 ME 8, ¶ 25, 788 A.2d 183, 190. Defendant refers to 14 M.R.S.A. § 8111(1)(C) granting immunity to employees of governmental entities "performing or failing to perform any discretionary function or duty."

Plaintiff argues "the Supreme Court has held that municipalities can be held liable for the acts of its policy makers to the extent that those actors have final decision making power on policy issues, or alternatively are enforcing longstanding municipal policy or custom."

Plaintiff then offers the following cite: "See, *Jett v. Dallas Independent School District*, 109 Sect. 2702, 2723024 (1989). This cite is unavailable as offered in plaintiff's brief. The U.S. Supreme Court case that plaintiff is apparently citing, decided in 1989 is correctly cited as *Jett v. Dallas Independent School District*, 491 U.S. 701 (1989). *See,* Unif. Me. Cit. II(A)(1)(a).

*Jett,* an action brought pursuant to 42 U.S.C. § 1983 by a white football coach at a predominantly black school in Texas dealt with rights guaranteed by 42 U.S.C.S. § 1981. This section of the case discusses what would be required for the coach to prevail on his

section1981 claim. How this might apply to the issue before this court under our state's laws is unclear.

The other cases cited by plaintiff are equally off target. *Comfort v. Town of Pittsfield,* 924 F. Supp. 1219, 1236 (D. Me. 1996) is cited for this proposition - "need not have official authority to make final decisions, and such authority can be implied from continued course of knowing acquiescence by governing body in exercise or policymaking authority by agency or official." Nothing remotely resembling that proposition is contained in the cited section of that case. What the *Comfort* did state was that in that case wherein officers of Pittsfield apparently beat a man arrested for suspected OUI, "[t]he Town of Pittsfield, however, is immune from suit under the MCTA." *Comfort v. Town of Pittsfield,* 924 F. Supp. 1219, 1236 (D. Me. 1996).

Plaintiff's final citation, to *McNally v. Mokarzel,* 386 A.2d 744 (Me. 1978), is offered to support the proposition that "conspiracy is not a separate tort but rather a rule of vicarious liability." No pin cite is supplied, but this phrase can be found at *McNally,* 386 A.2d at 748. Citation to this case involving a wrongful termination suit of a code enforcement officer by the Town of Old Orchard Beach does not appear to add anything to plaintiff's argument unless plaintiff is alleging actual conspiracy. Plaintiff's theory, in his complaint and so far, has hinged on the theory of *respondeat superior.*

Regarding the potential liability in tort of Chief of police Clark, there are a great many disputed facts regarding how and when the investigation of plaintiff began and was prosecuted. Regarding the facts, i.e. were false statements made about plaintiff (as opposed to mistaken statements), were they published sufficiently, was there recklessness or malice – the genesis and prosecution of this investigation and reporting to the school officials remains ill defined in the materials submitted by the parties. It is

impossible, on the facts as framed, to say whether or not Chief Clark acted "in bad faith" as per 14 M.R.S.A. § 8111(1)(E).

The entry will be:

Town defendants' motion for summary judgment is GRANTED as to the Town of Boothbay Harbor; the Town defendants' motion for summary judgment is DENIED as to Chief Steve Clark on the grounds that there exist genuine issues of material fact.

Dated: December __16__ ,2004

Donald H. Marden
Justice, Superior Court

Plaintiff:  Karen Wolfram, Esquire

Def. Town & Clark:  Lisa Fitzgibbon Bendetson, Esquire

Def. BB Harbor School District, Et Al:  Melissa Hewey, Esquire