## NATIONAL INDUSTRIAL CONSTRUCTORS, INC.

### v.

## SUPERINTENDENT OF INSURANCE et al.

Supreme Judicial Court of Maine.

Argued Jan. 6, 1995.

Decided March 2, 1995.

---

Marshall J. Tinkle (orally), Tompkins, Clough, Hirshon & Langer, P.A., Portland, for plaintiff.

Harold C. Pachios (orally), Preti, Flaherty, Beliveau & Pachios, Portland, Susan A. Sparaco (orally), Asst. Atty. Gen., Augusta, for defendants.

Before ROBERTS, GLASSMAN, RUDMAN, DANA, and LIPEZ, JJ.

ROBERTS, Justice.

National Industrial Constructors, Inc. (National) appeals from a judgment of the Superior Court (Kennebec County, *Alexander, J.*) affirming the decision of the Superintendent of Insurance that denied National's appeal challenging its assignment by the National Council on Compensation Insurance (Council) to the accident prevention account of the workers' compensation insurance residual market. The Superintendent permitted the Council to combine the loss ratios of entities under common control for purposes of safety pool eligibility and thereby assign National to the accident prevention account. National contends that the Superintendent erroneously interpreted the safety pool eligibility provisions of the Workers' Compensation Rating Act, 24–A M.R.S.A. §§ 2361–2374 (1990), *repealed and replaced by* P.L.1991, ch. 885, § B–11 & B–12 (effective Jan. 1, 1993). We agree with National and vacate the judgment of the Superior Court.

In *Maine AFL–CIO v. Superintendent of Ins.*, 595 A.2d 424 (Me.1991), we explained the organization of the workers' compensation residual market:

In Maine, workers' compensation insurance is divided into two markets, the voluntary market and the residual market. The residual market is an assigned risk pool designed to protect insurance carriers from risks that make it economically unattractive to underwrite specific employers voluntarily, thereby providing coverage for employers otherwise unable to find insurers willing to insure them. The residual

market is subdivided into an accident prevention account that services employers with demonstrated accident frequency problems and a safety pool that services employers that have good safety records but, nonetheless, have trouble procuring insurance in the voluntary market. *Id.* at 426. An employer is eligible for the safety pool if that employer:

(1) Has had no more than one lost-time claim in the last 3 years for which data is available, regardless of the resulting loss ratio;

(2) Has a loss ratio which does not exceed 1.0 over the last 3 years for which data is available; or

(3) Has been in business for less than 3 years, provided that the eligibility shall terminate if his loss ratio exceeds 1.0 at the end of any year.

24–A M.R.S.A. § 2366(3)(B) (1990). In contrast, an employer whose loss ratio exceeds 1.0 over the preceding 3 years is eligible for only the accident prevention account. *Id.* § 2366(2)(B). Employers in both the safety pool and the accident prevention account pay premiums that are determined by the application of an experience rating plan adopted by the Superintendent. *Id.* § 2366(5)(A). In addition to these premiums, employers assigned to the accident prevention account must pay a premium surcharge pursuant to section 2366(4)(B). Safety pool members do not pay this surcharge.

The facts in this case are uncontroverted. The Council, as the plan manager for the residual market, developed and administered the experience rating plan used to determine the premiums that employers in the residual market would pay. Both National and Rust Engineering Company are construction companies and wholly owned subsidiaries of Wheelabrator Technologies of America, Inc. National and Rust operate as separate companies under separate management, and each company has its own assets, equipment, and personnel. Rust began doing business in Maine in 1986, and National in 1989. When National initially obtained workers' compensation coverage in Maine through the residual market in 1989, the Council assigned National to the safety pool pursuant to section 2366(3)(B)(3) because National had been doing business in Maine for less than 3 years.

Later in 1989, the Council filed, and the Superintendent approved, a revised experience rating plan. This plan contained a "combination of entities" provision that permitted the Council to combine the experiences of two or more entities with common majority ownership for purposes of measuring an individual employer's future risk and computing premiums for that employer. When National applied for additional coverage for a new job site in 1990, the Council employed this same "combination of entities" method to determine National's loss ratio for purposes of the safety pool eligibility formula. Specifically, the Council combined the Maine experiences of National and its affiliate Rust. This treatment of National yielded a loss ratio of 1.83. Using this new loss ratio, the Council transferred National from the safety pool to the accident prevention account for its new coverage as well as for the 1990–91 renewal of its existing policy. If National's experience had not been combined with that of Rust, its loss ratio would have been below 1.00, making it eligible for the safety pool. As a result of the reassignment, National paid additional premiums.

National filed an appeal with the Superintendent. The Superintendent first determined that the Council's combination of entities method was valid for purposes of experience rating pursuant to section 2364(4). It then determined that this method was also valid for purposes of the safety pool eligibility determination pursuant to section 2366, explaining that the term "loss ratio" for purposes of safety pool eligibility "should have exactly the same meaning as it does under the experience rating plan and under the Accident Prevention Account surcharge plan, including any applicable adjustments for related party experience." National filed a complaint for direct judicial review of this decision pursuant to 5 M.R.S.A. §§ 11001–11008 (1989). National appeals the judgment affirming the Superintendent's decision.

National argues that the Superintendent's interpretation of the safety pool eligibility provision is erroneous because it contravenes the plain meanings of the terms "loss ratio"

and "employer." National contends that the criteria set forth in the statute for determining safety pool or accident prevention account eligibility do not authorize the combination of experiences or loss ratios of historically separate companies. We agree.

 Because the Superior Court acted as an intermediate appellate court, we review the Superintendent's decision directly. *Imagineering v. Superintendent of Ins.*, 593 A.2d 1050, 1053 (Me.1991). On questions involving the interpretation and application of technical statutes or regulations, we give deference to the administrative agency unless the statutes or regulations plainly compel a contrary result. *Id.* at 1053. That deference, however, " 'must yield to the fundamental approach of determining the legislative intent.' " *Agro v. Public Util. Comm'n*, 611 A.2d 566, 569 (Me. 1992) (quoting *Central Me. Power Co. v. Maine Public Util. Comm'n*, 436 A.2d 880, 885 (Me.1981)). The plain meaning of a statute always controls over an inconsistent administrative interpretation. *Scott Paper Co. v. State Tax Assessor*, 610 A.2d 275, 277 (Me.1992).

The procedure for determining safety pool eligibility is based on a simple formula described in plain language. There is no ambiguity in the term "an employer." "Employer" is not a term that can mean more than one applicant for insurance simply because those applicants are corporate affiliates. The plain meaning of the term "loss ratio" is the ratio of incurred losses to earned premium. Indeed, the Superintendent concedes that this meaning is the commonly understood meaning within the insurance industry. Thus, loss ratio for purposes of safety pool eligibility is calculated from the incurred losses and earned premium of the individual employer who applies for workers' compensation insurance coverage.

Moreover, unlike the Superintendent, we cannot discern any legislative intention that the determination of loss ratio for purposes of safety pool and accident prevention account assignment should be linked to methods used by the experience rating plan. We conclude, therefore, that the Superintendent's reliance on the provisions of section 2364 dealing with the experience rating plan

is unwarranted. In short, the eligibility requirements for the safety pool and the accident prevention account are free-standing and autonomous. The Superintendent erred by construing the statute to permit the Council to combine the experiences of National and Rust in order to calculate National's loss ratio for purposes of safety pool eligibility.

The entry is:

Judgment vacated.

Remanded with instruction to vacate the decision of the Superintendent of Insurance and remand for further proceedings consistent with the opinion herein.

All concurring.