2010 ME 65

**Janet McCLINTOCK**

v.

**MAINE PUBLIC EMPLOYEES RETIREMENT SYSTEM.**

Supreme Judicial Court of Maine.

Argued: May 20, 2010.
Decided: July 20, 2010.

Brenda T. Piampiano, Esq. (orally), Piampiano Law Offices, Yarmouth, ME, for Maine Public Employees Retirement System.

Charles R. Priest, Esq. (orally), Law Office of Charles Priest, Augusta, ME, for Janet McClintock.

Panel: ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

LEVY, J.

[¶ 1] The Maine Public Employees Retirement System (the System) appeals from a judgment of the Superior Court (Kennebec County, *Jabar, J.*) vacating the decision of the System's Board of Trustees that Janet McClintock was not entitled to full creditable service for the time she worked for the Attorney General's Office on a part-time basis. The System contends that the Board's decision was proper because (1) under the terms of 5 M.R.S. § 17751(3) (2009), the Board retained the

authority to rely on job classifications outlined in System Rule 401 to determine McClintock's service credits; and (2) McClintock was not a part-time employee eligible for full service credit. We vacate the judgment.

## I. BACKGROUND

[¶ 2] Janet McClintock began working as a full-time Assistant Attorney General at the Office of the Maine Attorney General in 1986. She joined the System in August 1987. In 1988, she took her first unpaid leave of absence, and when she returned in January 1989, it was to work three days per week. Since that time, with the exception of another leave of absence in 1991, she has consistently worked three to four days per week. At all relevant times, the Attorney General's Office has designated McClintock's position as "full-time, limited period," which is the designation used for positions funded from any source other than the General Fund.

[¶ 3] The means used by the System to calculate McClintock's creditable service have changed multiple times since she began working with the Attorney General's Office, but she has not consistently received full creditable service since she began working part-time hours in 1989. The methods by which McClintock's creditable service has been calculated arise from the System's Rule 401, which was first adopted in 1978 [1] and then substantially revised in 1991,[2] and statutory amendments to 5

---

1. At its time of enactment, M.P.E.R.S. Reg. 401(1), (2) (1978) provided in relevant part:

   1. *State Employees—Membership*

   Membership in the Maine State Retirement System will be compulsory for all State employees regardless of employment classification, that is, all regular, full-time, project, intermittent and other classes will be required to be members of the Maine State Retirement System and make the required contributions . . .

   . . . .

   C. Intermittent Permanent
   Intermittent Seasonal
   Intermittent Project
   Limited Period Project
   Part-time Limited Period
   Part-time Project
   Part-time Seasonal
   Legislative Employees

   Employees in these classifications will receive credit on the following basis: Actual number of days worked times 1.6, converted to years, months and days.

2. As revised in June 1991, M.P.E.R.S. Reg. 401(1)–(2–A) (1991) provided in relevant part:

   1. *State Employees–Membership*

   Membership in the Maine State Retirement System will be compulsory upon date of employment for all State employees regardless of employment classification or status . . .

   . . . .

   2. *State Employees—Creditable Service (— before July 1, 1991)*

   C. Intermittent Permanent
   Intermittent Seasonal
   Intermittent Project

   Employees in these classifications will

2. *State Employees—Creditable Service*

   A. Permanent—From beginning date to ending date.

   B. Seasonal & Part-time—Members whose employment is on an average of 20 hours per week for a 50–week period per year, will receive one full year of credit. If employment is on an average of less than 20 hours per week for a 50–week year, credit will be granted on the basis of number of days worked times 1.6, converted to years, months and days.

   A. Permanent—From beginning date to ending date.

   B. Seasonal and Part-time—Members whose employment is on an average of 20 hours per week for a 50–week period per year, will receive one full year of credit. If employment is on an average of less than 20 hours per week for a 50–week year, credit will [be] granted on the basis of the number of days worked times 1.6, converted to years, months and days.

M.R.S. § 17751(3) that were enacted in response to the 1991 revision of the rule.[3]

[¶ 4] In early 2004, McClintock contacted the System to review her creditable service. She received a determination from the System's retirement supervisor in March 2005 that she had accrued only partial creditable service each year after her first unpaid leave of absence in 1989.

McClintock spoke with several System retirement specialists, and in March 2006, she received a decision from the designee of the executive director concluding that her service credits had been properly determined.

[¶ 5] In May 2006, McClintock appealed to the Board, arguing that she should be awarded a full year's service credit for

> Limited Period Project
> Part-time Limited Period
> Part-time Project
> Part-time Seasonal
> Legislative Employees
>
> receive credit on the following basis:
> Actual number of days worked times
> 1.6, converted to years, months and days.

. . . .

(2–A. *State Employees Creditable Service—After June 30, 1991*

A. Employees whose creditable service was determined by subsections D, F and H of section 2 before July 1, 1991, shall continue to be covered by those subsections.

B. All other employees shall earn creditable service on the following basis:

1. For purposes of this subsection, a "full-time employee" is an employee who worked, in the pay periods covered by a payroll report, 100% of the regularly scheduled standard hours prescribed by the employer for employees in the same class and agency. However, if the employer prescribes less than 35 or more than 40 regularly scheduled standard hours per week for an employee class, for purposes of this rule, the employer shall be considered to have prescribed 35 and 40 regularly scheduled standard hours per week, respectively, for a full-time employee in that class.

2. Full service credit for the pay periods covered shall be granted to a member who works, in the pay periods covered by a payroll report, 100% of the hours worked by a full-time employee.

3. A member who works less than 100% of the hours worked by a full-time employee, in the pay periods covered by a payroll report, shall be granted creditable service equal to the ratio of hours worked by the member to 100% of the hours worked by a full-time employee.

4. Regardless of subsections 2 and 3, a member shall continue to accrue creditable service while on a leave of absence without pay of up to a month's duration each year. The member shall accrue creditable service during the leave of absence at the same rate creditable service was accrued during the six months prior to the commencement of the leave of absence.)

3. As amended and at present, 5 M.R.S. § 17751(3) (2009) provides:

**3. Board determination.** The board shall determine by appropriate rules how much service in any year qualifies for one year's service credit. Service rendered for the full normal working time in any year qualifies for one year's service credit. *The board shall provide in its rule related to the determination of creditable service for state employees that any part-time or seasonal state employee who was employed during the period beginning January 1, 1989 and ending June 30, 1991 is credited with a full year of creditable service for each year in which that employee is employed for 1,000 or more hours, for as long as that employee is employed by the State.* The board's rule must also treat in the same manner any employee first employed before July 1, 1991 who is employed in a position that is in a career ladder in which the employee is required to move from full-time status to seasonal status when accepting a promotion in the employee's career ladder. Section 17001, subsection 13, paragraph E does not apply to an employee who is credited with a full year of creditable service under this provision. Each state department or agency shall submit to the retirement system a list of all employees to whom this provision applies, in the manner and time provided by board rule.

(Emphasis added.)

each year that she worked more than 1000 hours since January 1, 1989, because she was a part-time employee entitled to full credit pursuant to 5 M.R.S. § 17751(3) and Rule 401. The Hearing Officer filed his final report to the Board affirming the System's decision in January 2007, and the executive director denied McClintock's appeal in September 2007.

[¶ 6] The System's Board of Trustees issued a final order denying McClintock's requested benefits on August 1, 2008. In its decision, the Board interpreted the term "part-time" as used in section 17751(3) "as referencing the 'part-time' employment classification incorporated in the original Rule 401." It noted: "The determinative distinction in this case is between the concept of a part-time *position* and that of an employee working part-time *hours* in a *full-time position*. Ms. McClintock works part-time hours in a full-time position." The Board concluded that because the Attorney General's Office classified McClintock's position as full-time, limited period, she was not a "part-time" employee for purposes of Rule 401(2),

[¶ 7] McClintock appealed the Board's decision to the Superior Court pursuant to M.R. Civ. P. 80C. The court determined that the term "part-time" as used in section 17751(3) was not ambiguous, and referred to part-time employees "in the ordinary sense." The court reasoned that the word "position" should not be read into the statute so as to qualify the term "part-time," stating: "Without some indication in the ... statutory scheme that the [term] 'part-time,' as used in § 17751, is referring to the budgetary classification of an employee rather than the ordinary meaning of the word, this court finds no ambiguity in § 17751." The court vacated the Board's decision, concluding that McClintock qualified as a "part-time" employee for purposes of section 17751 and was thus entitled to a full year of creditable service for each year she worked 1000 hours or more. This appeal followed.

## II.  DISCUSSION

[¶ 8] "When the Superior Court acts in an intermediate appellate capacity pursuant to M.R. Civ. P. 80C, we review [the administrative] agency's decision directly ... for legal errors, an unsustainable exercise of discretion, or unsupported findings of fact." *Tremblay v. Land Use Regulation Comm'n*, 2005 ME 110, ¶ 13, 883 A.2d 901, 904 (quotation marks omitted). The party seeking to overturn the Board's decision bears the burden of persuasion on appeal. *See Anderson v. Me. Pub. Emps. Ret. Sys.*, 2009 ME 134, ¶ 3, 985 A.2d 501, 503. When we review an agency's interpretation of a statute that is both administered by the agency and within the agency's expertise, we apply a two-part inquiry:

> Our first inquiry is to determine de novo whether the statute is ambiguous. An ambiguous statute has language that is reasonably susceptible of different interpretations. Second, we either review the [agency's] construction of the ambiguous statute for reasonableness or plainly construe the unambiguous statute. We accord great deference to the [agency's] interpretation if the statute is considered ambiguous, but will apply a different interpretation if the statute plainly compels a contrary result.

*Dep't of Corr. v. Pub. Utils. Comm'n*, 2009 ME 40, ¶ 8, 968 A.2d 1047, 1050 (quotation marks and citations omitted).

### A.  Construction of the Term "Part-time"

[¶ 9] The relevant portion of subsection 17751(3) states: "The board shall provide in its [relevant] rule ... that any part-time or seasonal state employee who

was employed during [the relevant period] is credited with a full year of creditable service for each year in which that employee is employed for 1,000 or more hours." Consistent with the Superior Court's approach, McClintock asserts that "part-time ... employee" is an unambiguous term because it plainly refers to a person who is employed for or working less than the amount of time considered customary or standard. The System counters that the term "part-time" has no plain meaning and should be interpreted in a manner consistent with the position-based classification system that the System has employed for many years.

[¶ 10] McClintock's employment experience with the Attorney General's Office demonstrates that one may be employed to work in a position that is classified as a full-time position, but only work part-time hours. Because the term "part-time" may refer narrowly to a position's classification by the employer, or more broadly to describe an employee who works fewer than full-time hours regardless of the position's classification, the term is reasonably susceptible to more than one meaning. Thus, "part-time" is properly considered to be ambiguous for purposes of our analysis, and we must next ask whether the Board's interpretation of section 17751 is reasonable. *See Dep't of Corrs.*, 2009 ME 40, ¶ 8, 968 A.2d at 1050.

### B. The Board's Interpretation of the Term "Part–Time Employee"

[¶ 11] The Board interpreted the term "part-time" as used in section 17751(3) to refer to the classification of the employee's position, and not, more broadly, the number of hours an employee works.[4] The meaning we attribute to the term "part-time" as used in section 17751(3) must account for the executive action and legislative response that gave rise to it. Therefore, in determining whether the System's interpretation is reasonable, we examine (1) the System's adoption and revision of Rule 401 pursuant to its authority to create rules regarding creditable service; and (2) the Legislature's revision of section 17751(3) in response to the System's rule revision.

#### 1. The System's Adoption and Revision of Rule 401

[¶ 12] As the System notes, it has had the general statutory authority for over forty years to "determine by appropriate rules" how much service is equivalent to one year of service. *See* P.L. 1955, ch. 417, § 1 (effective Aug. 20, 1955) (codified at R.S. ch. 63–A, § 4 (Supp. 1963)).[5] In 1978, the System adopted Rule 401 to calculate creditable service based on an employee's position classification. The 1978 version of Rule 401 granted one full year of creditable service to "seasonal and part-time" employees whose employment aver-

---

4. The System's construction of 5 M.R.S. § 17751(3) is also supported by 5 M.R.S. § 17001(26–A) (2009), which defines "part-time" employee to mean "an employee whose employment position is part-time ... as defined in 26 C.F.R. Part 31." *See* P.L.1991, ch. 619, § 3 (effective December 31, 1991). The relevant federal provision, 26 C.F.R. § 31.3121(b)(7)–2(d)(2)(iii)(A), defines a part-time employee as one "who normally works 20 hours or less per week." Although the Board did not address this statutory definition, it did find that McClintock worked "few-

er than 40 but more than 20 hours per week" in any given calendar year, and thus could have denied McClintock's appeal on this basis.

5. This statute was subsequently codified as 5 M.R.S.A. § 1094(4) (1964) when the Maine Revised Statutes Annotated were published. Although the statute was amended several times before it was eventually repealed, the System retained its general authority to create appropriate rules and regulations.

aged 1000 hours per year. M.P.E.R.S. Reg. 401(2)(B) (1978). The Rule also authorized partial credit to intermittent, limited period, project, and part-time seasonal employees based on the number of hours worked. M.P.E.R.S. Reg. 401(2)(C) (1978). Title 5 M.R.S.A. § 1094(4) (1964) plainly granted the System the authority to enact this rule.

[¶ 13] In 1985, the Legislature repealed 5 M.R.S.A. § 1094, replacing it with a new law that permitted the System to "determine by appropriate rules how much service in any year qualifies for one year's service credit." *See* P.L.1985, ch. 801, § 5 (effective Jan. 1, 1987) (codified at 5 M.R.S.A. § 17751 (Supp.1987)). Rule 401 was unaffected by this change.

[¶ 14] The System substantially revised Rule 401, effective in June 1991, changing creditable service for 1000–hour employees for employees classified as "seasonal" and "part-time." After July 1, 1991, credit for seasonal and part-time employees was based on the ratio of the hours worked by the employee to 100% of the hours that would be worked by a full-time employee with the same position. M.P.E.R.S. Reg. 401(2–A)(B)(3) (1991). Thus, a part-time employee who had previously received a full year of creditable service under Rule 401 would, under the new rule, instead receive a partial credit corresponding to the number of hours the employee actually worked.

2. Revision of section 17751(3)

[¶ 15] In 1992, the Legislature responded to the System's revision of Rule 401 by amending section 17751(3). *See* P.L. 1991, ch. 878, § 1 (effective June 30, 1992). Before its amendment, section 17751(3) simply directed the Board to "determine by appropriate rules how much service in any year qualifies for one year's service credit" with a single limitation:

"Service rendered for the full normal working time in any year qualifies for one year's service credit." *See* 5 M.R.S.A. § 17751(3) (1989). The amended section 17751(3) grandfathered the 1000–hour employees hired before July 1991, affording them the same full year of creditable service that they had received under the original Rule 401:

> The board shall provide in its rule related to the determination of creditable service for state employees that any part-time or seasonal state employee who was employed during the period beginning January 1, 1989 and ending June 30, 1991 is credited with a full year of creditable service for each year in which that employee is employed for 1,000 or more hours, for as long as that employee is employed by the State.

5 M.R.S. § 17751(3). The bill's Statement of Fact specified that the bill "restores the method of calculating annual service credit to certain part-time, seasonal, intermittent or legislative employees in effect prior to July 1, 1991." L.D. 2008, Statement of Fact (115th Legis. 1992). Thus, section 17751(3)'s legislative history reflects that the statutory revision was intended to protect seasonal and part-time employees who had previously enjoyed a full year of creditable service for each year they worked an average of 1000 hours.

[¶ 16] Accordingly, the revision of section 17751(3) did no more than prohibit the System from applying its revised Rule 401(2–A) to part-time 1000–hour employees hired before July 1, 1991. The revision assured that this specific class of employees would continue to receive a full year of creditable service as they had received under the original Rule 401. The revision did not otherwise disturb the System's long-standing approach to assigning and determining creditable service based on each employee's position classification.

The System's continued reliance on a position-based classification system for purposes of determining an employee's annual entitlement to creditable service is consistent with the applicable statute, and its interpretation of the term "part-time" employee is entitled to deference.

## C. McClintock's Classification

[¶ 17] We next consider the System's determination that McClintock worked in a "full-time, limited period" position for the purposes of applying Rule 401. The System argues that it properly considered the job classification reported by the Attorney General's Office in concluding that McClintock was a "limited period" employee and therefore not entitled to full creditable service pursuant to section 17751(3). McClintock argues that the budgetary term "limited period" refers only to the fact that the position was funded from dedicated funds, that this designation had nothing to do with the permanency of the position, and that the System's use of this classification was erroneous because it did not reflect her employment, which was, in actuality, part-time.

[¶ 18] The record establishes that the Attorney General's Office initially hired McClintock to work full-time and has classified her position as "full-time, limited period." The record further indicates that the Attorney General's Office has reported this classification to the System since McClintock was hired. The System did not err by relying on the "limited period" classification regarding McClintock's position to determine her creditable service hours. Because McClintock is an employee classified as "full-time, limited period," the Board did not err in concluding that she is not a grandfathered "part-time" 1000–hour employee under 5 M.R.S. § 17751(3).

The entry is:

Judgment vacated. Case remanded for entry of judgment affirming the Board's decision.