MAINE SUPREME JUDICIAL COURT                Reporter of Decisions
Decision:    2014 ME 100
Docket:      Ken-13-406
Argued:      May 13, 2014
Decided:     August 5, 2014

Panel:       ALEXANDER, SILVER, MEAD, GORMAN, and JABAR, JJ.


REVA MERRILL

v.

MAINE PUBLIC EMPLOYEES RETIREMENT SYSTEM


SILVER, J.

[¶1]  Reva Merrill appeals from a judgment entered in the Superior Court (Kennebec County, *Marden, J.*) affirming a decision of the Board of Trustees for the Maine Public Employees Retirement System denying her request for a waiver of past-due life insurance premiums.  Merrill contends that the Board erred in interpreting 5 M.R.S. § 17103(6) (2008)[1] to prohibit it from waiving past-due payments for the non-mandatory Group Life Insurance Program, and that the Board's administrative procedures violated her right to due process.  Because we agree with Merrill that the Board has the authority to waive back premiums, we vacate the Board's decision and remand the case for the Board to decide finally whether to waive Merrill's required payments.

---

[1]  Title 5 M.R.S. § 17103(6) was amended in 2009 by the addition of the following sentence:  "In these instances of recovery of overpayments from members of the retirement system, the retirement system is governed by section 17054, subsection 3."  P.L. 2009, ch. 322, § 2 (effective Sept. 12, 2009).

## I.  BACKGROUND

A.    Factual Background

[¶2]  The facts established in the administrative record are undisputed.  Reva Merrill was a full-time public school teacher from 1978 until her retirement in 2007.  As a teacher, she was eligible to participate in the Group Life Insurance (GLI) program, 5 M.R.S. §§ 18051-18061 (2008)[2], and elected to do so in 1978.  From 1978 to 1987, appropriate GLI premium payments were withheld from Merrill's paychecks.  In September 1988, Merrill left her first position to teach at Erskine Academy, a publicly funded private high school in China, Maine, and again she authorized premium deductions for GLI coverage.  Soon thereafter, in October 1988, Merrill was hired to fill a vacancy in Maine School Administrative District (MSAD) No. 9.  At that point Merrill took no action to either continue or terminate her GLI coverage, and MSAD No. 9 did not deduct her GLI premiums.[3]  As a result, Merrill's last GLI premium payment was made on September 30, 1988, and her GLI coverage lapsed for eighteen years.

---

[2]  Title 5 M.R.S. §§ 18051-18061 has been amended since 2008, but not in any way that affects this case.  *See, e.g.,* P.L. 2009, ch. 213, § LL-2 (effective Sept. 12, 2009) (codified at 5 M.R.S. § 18056 (2013)).

[3]  Between October 1988 and March 1990, the amount that should have been withheld from each of Merrill's paychecks was $3.78.  The amount to be withheld would have increased slightly each year thereafter; beginning in April 2006, the amount that should have been withheld from each paycheck was $11.60.

[¶3]  In March 2006, the Maine Public Employees Retirement System, after reviewing Merrill's record, informed her by letter that her GLI status was listed as "refused."  Merrill advised the System that she thought she was covered.  The System determined that the lapse in coverage was due to a payroll error by MSAD No. 9, and informed Merrill that pursuant to its Rule 601 § 4(C)[4] she had the option to restore her GLI coverage by (1) paying $3241.44 of past-due premiums by May 17, 2006; (2) filing evidence of insurability for coverage; or (3) waiting for open enrollment, although no open enrollment period was anticipated in the near future.

[¶4]  On May 30, 2006, Merrill paid the back GLI premium payments under protest.  She also submitted evidence of insurability and an application for coverage; however, the application was denied.  Merrill subsequently sought

---

[4]  The version of Rule 601 § 4(C) that was in effect both in 1988 when the payroll error occurred and in 2006 when the error was discovered provided:

> Whenever it is determined by the Executive Director that, through an error by Maine State Retirement System personnel or payroll personnel, deductions for insurance are not taken, the participant will be given the option to:
>
> (1)  Pay back premiums from date of eligibility or date last payments were taken;
>
> (2)  File evidence of insurability with coverage effective on the date approved by the insurance company from which the policy was purchased; or
>
> (3)  Wait for an open enrollment.

12 C.M.R. 94-411 601 § 4(C) (effective Dec. 18, 1983).  Rule 601 was amended in 2008 to eliminate the option of waiting for open enrollment.  *See* 12 C.M.R. 94-411 601 § 4(4) (effective Jan. 20, 2008). "Because the current rule incorporates the former rule's requirements for back payments or evidence of insurability in order to gain coverage, our analysis of the former rule applies equally to the current rule." *Goodrich v. Me. Pub. Emps. Ret. Sys.*, 2012 ME 95, ¶ 3 n.3, 48 A.3d 212.

administrative review to request the return of her past-due GLI premium payments. Meanwhile, the current GLI premiums were deducted regularly from her paychecks. By the time Merrill retired from MSAD No. 9 on July 1, 2007, she had participated in the GLI Program for over ten years, and she therefore met the statutory requirements to carry basic coverage into retirement at no cost, 5 M.R.S. § 18061(2)(A).

B.    Merrill's Administrative Appeal

[¶5]    Starting in 2007 and continuing through the end of 2010, Merrill pursued an administrative appeal within the System seeking the return of her payment. On April 3, 2008, the executive director affirmed the System's decision requiring Merrill to pay past premiums. Merrill appealed this decision to the Board of Trustees, and in May 2008, a testimonial hearing was held before a Hearing Officer.[5]   In November 2008, the Hearing Officer issued a written recommendation to the Board opining that "[t]he decision of the Executive Director refusing to return [Merrill's] payment may be sustained under strict application of [Rule 601 § 4(C)], although the Board of Trustees has the discretion

---

[5]   Pursuant to Rule 702, an appeal from an executive director's decision is assigned to a hearing officer, who has the authority to conduct hearings and submit a recommendation to the Board of Trustees. *See* 12 C.M.R. 94-411 702 §§ 8, 15 (2014).  Pursuant to 5 M.R.S. § 17106-A(1) (2013), "[t]he board shall accept the recommended decision of the hearing officer" unless certain limited exceptions apply. *See infra* n.6.

to waive all or part of her payment under Title 5, Section 17103(6)."[6]   On January 15, 2009, the Board convened for a regular meeting and heard presentations by counsel for Merrill and for the System.  The Board then voted unanimously to grant Merrill's request for a waiver.   By a letter dated January 21, 2009, the Board informed Merrill of its vote and stated that it expected to issue a formal decision within four weeks.

[¶6]  The Board revisited the case at a meeting on February 12, 2009.  The Assistant Attorney General serving as Board Counsel, who was charged with writing the Board's final decision, requested guidance concerning the Board's rationale for applying section 17103(6), which authorizes the Board to waive back payments resulting from an employer's error, instead of Rule 601 § 4(C), which requires either back pay or evidence of insurability.  The Board voted to continue Merrill's case and to reconsider its preliminary decision to grant a waiver.

---

[6]  The version of 5 M.R.S. § 17103(6) in effect in 2008 provided:

> **6. Rights, credits and privileges; decisions.**  The board shall in all cases make the final and determining administrative decision in all matters affecting the rights, credits and privileges of all members of all programs of the retirement system whether in participating local districts or in the state service.

> Whenever the board finds that, because of an error or omission on the part of the employer of a member or retired member, a member or retired member is required to make a payment or payments to the retirement system, the board may waive payment of all or part of the amount due from the member or retired member.

See P.L. 2007, ch. 491, § 77 (effective June 30, 2008).

6

[¶7]  The Board took no further action on the case during the following twenty-two months.  Merrill's counsel sent letters to the Board on June 7, 2010, and November 8, 2010, requesting an official decision.  On November 9, 2010, Board Counsel Mann informed Merrill that a new statutory provision, 5 M.R.S. § 17106-A (2013),[7] had become effective since the Board's meeting in February 2009, and that this provision required the Board to adopt the hearing officer's recommendation unless it contained errors of law or fact or constituted an abuse of authority.

[¶8]  Finally, on December 9, 2010, the Board voted to adopt the decision of the executive director requiring Merrill to pay $3241.44 in past-due GLI premiums, and it issued a written decision to that effect on December 23, 2010. The decision acknowledged that the Board had the discretion to waive payments pursuant to section 17103(6) but did not address why this provision did not apply

---

[7]  Title 5 M.R.S. § 17106-A(1) (2013) provides:

> **1. Independent decision makers.**  All hearing officers are independent decision makers and are authorized to make recommended final decisions in regard to matters that come before them, consistent with applicable statutes and rules.  A decision of the hearing officer must be based upon the record as a whole.  The board shall accept the recommended decision of the hearing officer unless the recommended decision is not supported by the record as a whole, the retirement system is advised by the Attorney General that the hearing officer has made an error of law or the decision exceeds the authority or jurisdiction conferred upon the hearing officer.  A decision of the board upon a recommended decision of the hearing officer constitutes final agency action. The board shall retain its decision-making authority in all retirement system policy areas.

*See* P.L. 2009, ch. 322, § 7 (effective Sept. 12, 2009).

or why the Board reversed its preliminary decision granting Merrill's request for a waiver.

C.     Merrill's First Rule 80C Appeal to the Superior Court

[¶9]   Merrill sought judicial review of the Board's decision pursuant to M.R. Civ. P. 80C.  On December 13, 2011, the Superior Court entered an order vacating the Board's decision and remanding the case for reconsideration on the merits.  The court found no error in the Board's conclusion that Rule 601 § 4(C) applies to Merrill's case, but concluded that the Board had abused its discretion and acted arbitrarily and capriciously when it failed to explain its reversal of its preliminary decision granting Merrill's request for a waiver:

> The Board's failure to consider waiver is especially troublesome because it had previously decided to grant waiver in January 2009, and nothing changed factually between then and the final vote in December 2010.  [The Board] is correct that the decision to waive payment under § 17103(6) is within the Board's discretion; however, in a situation like this, where the Hearing Officer report specifically presents waiver as an option, and the Board had initially voted to waive payment, later reversing that decision *with no substantial discussion on the issue*, the Board has abused its discretion.  Put differently, the failure to exercise any discretion in reaching its final decision was an abuse of discretion in itself.

The court further concluded that, contrary to the Board's argument, the Board could not have been bound by the Hearing Officer's recommendation pursuant to 5 M.R.S. § 17106-A(1) because the Hearing Officer did not make a definitive recommendation; rather, his report essentially presented the Board with the option

8

of following either Rule 601§ 4(C) or section 17103(6). The court also found that the Board's conduct was arbitrary and capricious because it took nearly two years to render a final decision based on a purported conflict between Rule 601 § 4(C) and section 17103(6), but did not resolve or even address that conflict in its final decision. As to the purported conflict between the Rule and the statute, the court noted, "[B]y all appearances, [section] 17103(6) is nothing more than an exception to [Rule 601]."

[¶10] On remand, the Board requested legal briefs from both sides and held an additional hearing on May 10, 2012. The Board issued its second decision on June 5, 2012, again denying Merrill's request. This time, the Board concluded that section 17103(6) did not apply to Merrill's circumstances because the provision applies only to mandatory programs such as retirement contributions, and not to voluntary programs such as GLI:

> Pursuant to the statute, the Board has the sole discretion to waive payment in those circumstances where a member is "required" to make a payment to [the System]. The statute applies in those instances where the actions of the employer have created an unexpected monetary obligation, which is required from an employee. However, in Ms. Merrill's case, the Board finds the GLI payments were not "required" as defined under the statute. GLI coverage is voluntary and because of this, many eligible employees seek coverage elsewhere or decline coverage altogether. Accordingly, section 17103(6) does not apply.

The Board further reasoned that, although it has the authority to demand reimbursement for retirement contributions from employers pursuant to 5 M.R.S. § 17154(9) (2013), it lacks the authority to do so for the non-mandatory GLI Program.[8]

[¶11]  The Board opined that, in any event, even if section 17103(6) did apply, the fact that Merrill's employer committed an error, standing alone, was insufficient to justify granting a waiver.  Rather, "[t]he facts in an eligible case must demonstrate circumstances on the part of the employer and the employee, which compel the Board to depart from the requirements set forth in Board Rule ch. 601."  The Board found that Merrill's circumstances did not meet that undefined standard.

D.     Merrill's Second Rule 80C Appeal to the Superior Court

[¶12]  Merrill again sought review of the Board's decision pursuant to M.R. Civ. P. 80C, contending that the Board erred as a matter of law in its interpretation of section 17103(6) and that the Board had violated her due process rights by, among other things, failing to provide notice of its interpretation of the statute in advance of the hearing.  On July 29, 2013, the Superior Court affirmed

---

[8] Earlier in the litigation in the Superior Court, the System made a motion to join Merrill's employer, MSAD No. 9, as a necessary party.  Merrill opposed the motion, contending that the court could grant complete relief without MSAD No. 9 because it was the System that collected back premiums from Merrill.  The Superior Court dismissed the Board's motion but later commented to the Board, "In spite of inquiry, this Court does not understand why the premiums have not been paid by the employer responsible for this situation."

the Board's decision. Citing the high standard for agency deference, the court concluded that the Board's interpretation of the statute was reasonable and did not constitute an abuse of discretion or error of law. The court declined to address Merrill's due process claim because the Board's decision was based solely upon statutory interpretation and not on any factual disputes. Merrill timely appealed from the court's judgment.

## II. DISCUSSION

### A. Statutory Interpretation

[¶13] When the Superior Court acts in an intermediate appellate capacity pursuant to M.R. Civ. P. 80C, we "review the Board's decision directly for errors of law, abuse of discretion, or findings not supported by substantial evidence in the record." *Goodrich v. Me. Pub. Emps. Ret. Sys.*, 2012 ME 95, ¶ 6, 48 A.3d 212. "The party seeking to overturn the Board's decision bears the burden of persuasion on appeal." *Kennebec Cnty. v. Me. Pub. Emps. Ret. Sys.*, 2014 ME 26, ¶ 12, 86 A.3d 1204 (quotation marks omitted). When reviewing an agency's interpretation of a statute that is administered by the agency and falls within the agency's expertise, we apply a two-part inquiry:

> Our first inquiry is to determine de novo whether the statute is ambiguous. An ambiguous statute has language that is reasonably susceptible of different interpretations. Second, we either review the agency's construction of the ambiguous statute for reasonableness or plainly construe the unambiguous statute. We accord great deference

to the agency's interpretation if the statute is considered ambiguous, but will apply a different interpretation if the statute plainly compels a contrary result.

*McClintock v. Me. Pub. Emps. Ret. Sys.*, 2010 ME 65, ¶ 8, 1 A.3d 431 (alterations omitted) (quotation marks omitted). When construing a statute, we look "first to the statute's plain language to give effect to the Legislature's intent, considering the language in the context of the whole statutory scheme to avoid absurd, illogical, or inconsistent results." *Kennebec Cnty.*, 2014 ME 26, ¶ 20, 86 A.3d 1204 (quotation marks omitted).

[¶14] At the time of Merrill's initial appeal to the Board, 5 M.R.S. § 17103(6) stated in its entirety:

> The board shall in all cases make the final and determining administrative decision in all matters affecting the rights, credits and privileges of all members of all programs of the retirement system whether in participating local districts or in the state service.

> Whenever the board finds that, because of an error or omission on the part of the employer of a member or retired member, a member or retired member is required to make a payment or payments to the retirement system, the board may waive payment of all or part of the amount due from the member or retired member.

[¶15] The Board contends that its interpretation of the phrase "required to make a payment" as meaning "required to make a payment that is legally recoverable" is reasonable, and that we must therefore defer to it. However, we discern no ambiguity in the word "required" or in any of the other language of

section 17103(6). Accordingly, we do not consider whether the Board's interpretation is reasonable, but instead construe the statutory language according to its plain meaning, seeking to avoid absurd, illogical, or inconsistent results.[9] *See Kennebec Cnty.*, 2014 ME 26, ¶ 20, 86 A.3d 1204; *McClintock*, 2010 ME 65, ¶ 8, 1 A.3d 431; *see also State v. Ray*, 1999 ME 167, ¶ 7, 741 A.2d 455 ("Undefined terms within a statute are given their everyday meaning, and that meaning must be consistent with the overall statutory context and must be construed in the light of the subject matter, the purpose of the statute and the consequences of a particular interpretation." (citations omitted) (quotation marks omitted)); *Nat'l Indus. Constructors, Inc. v. Superintendent of Ins.*, 655 A.2d 342, 345 (Me. 1995) ("The plain meaning of a statute always controls over an inconsistent administrative interpretation.").

[¶16] Giving the phrase "required to make a payment" its everyday meaning, we are not persuaded by the System's contention that this language refers only to payments that would be legally recoverable by the System, such as payments to compensate for an overpayment of life insurance benefits. Such an interpretation would be inconsistent with the first paragraph of section 17103(6),

---

[9] Because the statutory language is unambiguous, we also do not consider the System's argument that the Legislature's intent in enacting section 17103(6) was solely to address situations involving the overpayment of benefits. *See Jones v. Cost Mgmt., Inc.*, 2014 ME 41, ¶ 12, 88 A.3d 147 ("[O]nly if [a] statute is ambiguous will we look to extrinsic indicia of legislative intent such as relevant legislative history." (quotation marks omitted)).

which provides that the Board shall make the final administrative decision in "all matters affecting the rights, credits and privileges of all members of *all programs* of the retirement system . . . ." (Emphasis added.) Further, we note that the word "whenever" as used in section 17103(6) suggests a broad range of cases, particularly because the provision contains no language that would limit its application to circumstances involving the overpayment of insurance benefits.

[¶17] The construction the Board urges us to accept would have absurd and illogical results. *See Kennebec Cnty.*, 2014 ME 26, ¶ 20, 86 A.3d 1204. According to the System's interpretation of section 17103(6), the Board would have the ability to waive payments that are legally required, yet it would have no legal authority to waive payments that have become necessary by reason of an employer's error when those payments are associated with a "voluntary" program. Contrary to the System's argument, construing the word "required" to mean something other than "legally required" will not render it surplusage. Placing the term in its proper context, it is plain that section 17103(6) provides that the Board has the authority to waive, or partially waive, any payment or payments a member or retired member has been required to make "because of an error or omission on the part of the employer of a member or retired member." In other words, this section applies where an error by an employer necessitates a payment to the System by the employee.

14

[¶18]   We do not agree with the Board's contention that Merrill was not required to make a payment because of employer error.   Here, Merrill had a statutory "entitlement to unconditional, automatic basic life insurance" for which she was not required to "demonstrate insurability or initially apply for coverage." *Goodrich*, 2012 ME 95, ¶ 7, 48 A.3d 212 (citing 5 M.R.S. § 18058(1) (2010)). The only way for her to refuse coverage would have been to provide written notice to her employer.   5 M.R.S. § 18058(2)(A).   In order to maintain her statutory right to have her insurance coverage extend into retirement at no cost, *see* 5 M.R.S. § 18661(2) (2013), she was required to make a payment to the System.   Although it is true, as the System points out, that many members elect not to participate in the GLI Program and instead seek insurance elsewhere, Merrill did not make that election.   On these facts, it is misleading to suggest that she is only now choosing to exercise her statutory right to participate in the GLI Program, and that her payment of the back premiums was entirely voluntary.

[¶19]   We are similarly unpersuaded by the System's contention that interpreting the statute in this manner will allow State employees to seek a waiver for payments to any voluntary program.   A reading of the entire provision undercuts this assertion; by the statute's plain terms, the Board may consider a waiver only when the payment is required because of employer error.   Thus, giving the language of the statute its everyday meaning, we conclude that the Board has

the authority to waive any payment an employee is required to make as a result of employer error regardless of whether the payment is to a voluntary program or whether the payment would have been legally recoverable by the System.

B.    Due Process Analysis

[¶20]   We next consider whether, given the Board's statutory authority to waive the requirement that Merrill pay back premiums in order to maintain coverage, due process requires that the Board establish criteria for determining whether to grant such a waiver and to hold an evidentiary hearing before making its decision.

[¶21]   "Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) (quotation marks omitted).  We analyze procedural due process claims by utilizing a two-step inquiry: first, we determine whether the government action has deprived the claimant of a protected property interest, and second, if such a deprivation occurred, we must determine what process is due pursuant to the Fourteenth Amendment.  *McNaughton v. Kelsey*, 1997 ME 182, ¶ 6, 698 A.2d 1049.  "[The] dimensions [of a property interest] are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain

benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Eligible public employees enjoy an entitlement to automatic basic life insurance, even though the exercise of the right to participate in the GLI Program necessarily entails the payment of premiums, usually through payroll deductions. *See Goodrich*, 2012 ME 95, ¶¶ 7, 10, 12, 48 A.3d 212. Thus, the continued receipt of the benefit of participating in the GLI Program is, for purposes of due process, a statutorily created property interest. *See Mathews*, 424 U.S. at 332. Accordingly, we conclude that when the Board determines whether a member or retired member is required to make back payments of premiums for periods during which no coverage was in effect, certain minimal procedural requirements must be met in order to satisfy the requirements of due process. A determination whether to waive payments pursuant to section 17103(6) must necessarily be decided within the context of those procedural safeguards as well.

[¶22] "Due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews*, 424 U.S. at 334 (quotation marks omitted) (alterations omitted). In determining what process is due, we consider three factors: (1) the private interest that will be affected by the State action; (2) the risk of an erroneous deprivation of the property interest at issue; and (3) the Government's interest, including the function involved and the administrative

burden that additional or substitute procedural requirements will entail.  *Balian v. Bd. of Licensure in Med.*, 1999 ME 8, ¶ 10, 722 A.2d 364.

[¶23]  With respect to the first factor, although Merrill's insurance coverage has been reinstated and she has successfully carried her coverage into retirement, contrary to the System's contention, she is not seeking to obtain "free insurance" by seeking the refund of her back premiums.  Fortunately, System employees discovered the school district's failure to deduct premiums from Merrill's paychecks and alerted her that her coverage had lapsed.  Nevertheless, during the eighteen years during which her employer failed to properly make deductions from her paycheck, Merrill was without insurance coverage.  Requiring Merrill to pay several thousand dollars for a product she never received in order to maintain coverage going forward implicates an important property interest, regardless of the System's rules requiring such payment.[10]

[¶24]  With regard to the second factor, although the Board retains the discretion to decide whether to waive payments pursuant to section 17103(6), disclosing the standard that the Board will use in making that decision will permit members and retired members like Merrill to intelligently present evidence pertinent to the Board's consideration, assist the Board in making its decision, and

---

[10]  We do not address whether Rule 601 § 4(C) is unconstitutional because Merrill has not raised that argument on appeal.

18

enhance our ability to provide effective appellate review. *See Balian*, 1999 ME 8, ¶ 12, 722 A.2d 364.

[¶25] Finally, with regard to the third factor, requiring the Board to provide parties with notice of the criteria it will consider in making its decision concerning waiver will not impose an unnecessarily heavy administrative burden on the Board. In most cases, evidence and argument pertaining to the issue of waiver can be presented during the same hearing at which issues of employer error are addressed.

[¶26] We have said that the basic notice requirement of due process "is a threshold constitutional requirement to assure that the government does not appropriate private property interests without first taking reasonable steps to assure that the property owner is aware of both the danger of the loss of his interest and of the opportunity to avoid the forfeiture by performance of the acts necessary to that end." *McNaughton*, 1997 ME 182, ¶ 6, 698 A.2d 1049 (quotation marks omitted). Thus, we conclude that due process requires that, when considering whether to waive required payments pursuant to section 17103(6), the Board must do so by reference to a standard or standards that are made known to the parties, enabling them to present relevant evidence.[11]  Otherwise, the constitutional right to a

---

[11]  The Board has the ability to promulgate such standards by rule. *See* 5 M.R.S. § 8002(9)(A) (2013) (defining "rule" as "the whole or any part of every regulation, standard, code, statement of policy, or other agency guideline or statement of general applicability . . . that is or is intended to be judicially enforceable and . . . describes the procedures or practices of the agency").  The Legislature may also

hearing would be rendered meaningless. *See Mathews*, 424 U.S. at 333 ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." (quotation marks omitted)).

[¶27] In this case, neither the hearing before the Hearing Officer nor the submission of briefs and oral arguments before the Board afforded Merrill an adequate opportunity to present evidence relevant to the Board's criteria for evaluating whether to grant a waiver. On remand, the Board must necessarily consider the merits of Merrill's request for a waiver in light of the standards it promulgates. Due process requires that Merrill be afforded a hearing and notice of the standards the Board will use in evaluating her request for a waiver. Thus, although Merrill has already had a hearing in this case, in light of our holding today she is entitled to a new hearing, including adequate notice of the substantive standards that the Board will apply to her request, so that she may present evidence relevant to the Board's consideration of her request for a waiver.

The entry is:

> Judgment vacated. Remanded for further proceedings consistent with this opinion.

---

delineate factors the Board must consider when deciding whether to waive payments members or retired members are required to make as a result of employer error.

**On the briefs:**

> Donald F. Fontaine, Esq., Law Offices of Donald F. Fontaine, Portland, for appellant Reva Merrill

> Janet T. Mills, Attorney General, and Christopher L. Mann, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Maine Public Employees Retirement System

**At oral argument:**

> Donald F. Fontaine, Esq., for appellant Reva Merrill

> Christopher L. Mann, Asst. Atty. Gen., for appellee Maine Public Employees Retirement System

Kennebec County Superior Court docket numbers AP-2011-10 & AP-2012-32
FOR CLERK REFERENCE ONLY